J-A03013-23

2023 PA Super 22

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ODANE A. SPENCE | : | |
| | : | |
| Appellant | : | No. 1977 EDA 2022 |

Appeal from the Judgment of Sentence Entered June 30, 2022
In the Court of Common Pleas of Monroe County Criminal Division at
No(s): CP-45-CR-0001992-2021

BEFORE:   KING, J., SULLIVAN, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.:                    **FILED FEBRUARY 15, 2023**

Appellant, Odane A. Spence, appeals from the judgment of sentence entered in the Court of Common Pleas of Monroe County following his conviction at a non-jury trial on the charges of driving while under the influence ("DUI") of a controlled substance-impaired ability, driving while operating privileges are suspended or revoked, operating a vehicle without financial responsibility, turning movements and required signals, and careless driving.[1]  After a careful review, we affirm.

The relevant facts and procedural history are as follows: On September 27, 2021, the Commonwealth filed an Information charging Appellant with

---

[*] Former Justice specially assigned to the Superior Court.

[1] 75 Pa.C.S.A. §§ 3802(d)(2), 1543(a), 1786(f), 3334(a), and 3714(a), respectively.

DUI and various traffic offenses in connection with an incident occurring on July 27, 2020. With the assistance of counsel, Appellant filed a pre-trial omnibus suppression motion on April 25, 2022. Therein, Appellant sought the suppression of all evidence on the basis the police improperly stopped his vehicle. He also sought suppression of the statements he made to the police "relative to drug use" since he was not provided with **Miranda**[2] warnings prior thereto. Appellant's Pre-Trial Suppression Motion, filed 4/25/22, at 3.

On April 26, 2022, the suppression court held a suppression hearing at which Pennsylvania State Police Trooper Kody Nowicki was the sole testifying witness. Specifically, Trooper Nowicki testified that, on July 27, 2020, during daylight hours, he was on duty and working at a safety checkpoint with other officers on Woodland Drive in Paradise Township. N.T., 4/26/22, at 11. The purpose of the safety checkpoint was for the police to determine whether vehicles were properly registered and inspected, as well as to determine whether drivers and passengers were wearing their seatbelts. *Id.*

Trooper Nowicki testified that, while working at the checkpoint, he was standing outside of his police vehicle "monitoring traffic that was coming from the casino area to Route 611." *Id.* at 12. He indicated he had a clear line of sight down the roadway. *Id.* He testified that, as he monitored the traffic, he "observed a silver sedan turn around prior to the checkpoint. As the sedan

---

[2] **Miranda v. Arizona**, 348 U.S. 436, 86 S.Ct. 1602 (1966).

was turning around, the sedan did not utilize its left turn signal [which was a] violation." *Id.* at 13. Trooper Nowicki clarified the silver sedan made a U-turn on Woodland Drive without using its turn signal. *Id.* at 19.

Trooper Nowicki testified that:

> At that point, my vehicle was further down the road, and I was standing next to Trooper Anthony Spegar's patrol vehicle. Due to the far location of my patrol vehicle, I—myself and Trooper Spegar entered his vehicle and attempted to catch up to the suspect vehicle….Trooper Spegar was driving and I was the passenger of his [patrol] vehicle.

*Id.* at 13.

Trooper Nowicki indicated the silver sedan was not that far in front of the checkpoint before it made the U-turn and then drove off at a high rate of speed. *Id.* at 19. Specifically, he noted that, as he and Trooper Spegar attempted to catch up to the silver sedan, the silver sedan "was traveling at a very high rate of speed and the vehicle either had a modified exhaust or no exhaust where you're able to hear the vehicle and its RPMs increasing as [the police] were attempting to catch up to the vehicle." *Id.* at 20. Trooper Nowicki testified that, while he and Trooper Spegar followed the silver sedan, he observed the silver sedan make a left hand turn from Woodland Drive onto Meadowside Road without using a turn signal. *Id.*

Trooper Nowicki indicated that, after the silver sedan slowed down, he entered the sedan's license plate into the NCIC CLEAN ("NCIC") database via his mobile desktop terminal. *Id.* at 35. As a result, he discovered the silver sedan's registration was suspended in the State of New York due to an

insurance lapse. *Id.* at 20. He also noted the owner of the vehicle, who was later identified as the driver (Appellant), had a suspended driver's license; however, this information was not discovered until "a later portion of the traffic stop." *Id.* at 35.

Trooper Nowicki testified that, after Appellant stopped the silver sedan, he and Trooper Spegar exited the police cruiser to approach Appellant. *Id.* at 24. He testified that, as soon as he "exited Trooper Spegar's patrol vehicle, [he] immediately detected the odor of marijuana. It appeared to be coming from the interior of that suspect vehicle." *Id.* As Trooper Nowicki approached the silver sedan, he determined the odor of marijuana was emanating from the silver sedan. *Id.* Meanwhile, Trooper Spegar approached the vehicle and seized the car keys from Appellant, who had just led the police on a highspeed chase. *Id.* at 20.

Trooper Nowicki testified Appellant informed the police he saw the safety checkpoint and turned around because he knew "his license or his registration" had been suspended. *Id.* at 23. Trooper Nowicki testified he asked Appellant to exit the silver sedan and "[Appellant] brought up the fact of marijuana when I asked him to exit the vehicle." *Id.* Trooper Nowicki asked Appellant "when was the last time he smoked," and Appellant indicated "approximately four hours ago." *Id.*

On cross-examination, Trooper Nowicki confirmed that, while he was on duty at the safety checkpoint, he observed the silver sedan "turn around

- 4 -

without its turn signal[,]" and he and Trooper Spegar immediately entered a police cruiser to follow the silver sedan. *Id.* at 27. He confirmed the silver sedan traveled away from the checkpoint, as well as the police cruiser, at a "high speed" such that Trooper Spegar remarked "woo." *Id.* at 32. He noted that, as the vehicle continued to pull away from the police cruiser, he activated the police cruiser's lights because the silver sedan "was traveling well above the speed limit." *Id.* at 33.

At the conclusion of the hearing, the suppression court specifically stated it found "Trooper Nowicki's testimony to be credible." *Id.* at 39. The suppression court denied Appellant's motion to suppress.

The parties then stipulated to proceed immediately to a non-jury trial, as well as stipulated to incorporating the testimony and cross-examination of Trooper Nowicki from the suppression hearing. *Id.* The Commonwealth indicated it had additional testimony to offer from Trooper Nowicki for purposes of the non-jury trial.

Trooper Nowicki testified that Appellant did not have a valid driver's license or vehicle registration at the time he was driving on July 27, 2020. *Id.* at 40. Specifically, he noted he entered Appellant's driver's license information and license plate information into the NCIC database during the traffic incident, and the State of New York "certified that [Appellant's] driver's license and registration were suspended at the time of the traffic stop." *Id.* Further, Appellant failed to provide valid vehicle insurance while on the scene,

and Trooper Nowicki confirmed Appellant did not have valid vehicle insurance. *Id.* at 48-49.

Trooper Nowicki noted he had extensive training and on-duty experience in administering field sobriety tests, as well as investigating suspected DUI cases. *Id.* at 44-45. He confirmed that, during the traffic stop, Appellant was subjected to field sobriety tests, which he could not perform adequately. *Id.* He noted that, because of the signs that Appellant was intoxicated, he asked Appellant if he used cocaine or methamphetamine, and Appellant "did not admit to any other narcotics other than marijuana." *Id.* at 46. Trooper Nowicki testified that "based upon [his] training and experience as well as the interview and observations on [the] scene,…[Appellant] was unable to safely operate a motor vehicle." *Id.* at 45.

Trooper Nowicki indicated he read Appellant the implied consent warning form, Appellant related that he consented to testing, and Appellant was transported to the Monroe County Correctional Facility. *Id.* at 46. After arriving at the correctional facility, Trooper Nowicki again read Appellant the implied consent waiver form, and Appellant indicated his refusal to consent to testing. *Id.*

On cross-examination, Trooper Nowicki testified that "[he] believed [Appellant's driver's license] was also suspended in the State of Pennsylvania for a previous DUI, but [he did] not recall 100 percent." *Id.* at 54. The Commonwealth entered into evidence Appellant's driver's license record from

- 6 -

the Pennsylvania Department of Transportation ("PennDOT").[3]  The PennDot

record reveals Appellant's driver's license record was in a "suspended" status.

At the conclusion of hearing all testimony and receiving all evidence, the

trial court found Appellant guilty of the offenses set forth *supra*.  On June 30,

2022, Appellant proceeded to a sentencing hearing, at which the trial court

imposed an aggregate sentence of seventy-two hours to six months in prison,

to be followed by six months of probation.  Appellant did not file a post-

sentence motion; however, he filed a timely counseled notice of appeal.  All

Pa.R.A.P. 1925 requirements have been met.

On appeal, Appellant sets forth the following issues in his "Statement of

Questions Involved" (verbatim):

I.    Did the trial court abuse its discretion by not suppressing the traffic stop where there was no indication of a motor vehicle violation when a driver turns around before a DUI checkpoint[?]

II.   Did the trial court abuse its discretion by not to [*sic*] suppressing the statements of Appellant when Appellant was suspected of a crime and the Trooper did not Mirandize Appellant before asking him questions?

III.  Did the trial court abuse its discretion by finding Appellant guilty as to Driving Under the Influence-Controlled Substance, in that there was insufficient evidence to convict Appellant of the crime, in that the Commonwealth failed to prove an element of the crime that the Appellant was rendered incapable of safely driving when Appellant turned around prior to a DUI checkpoint and there was no evidence of bad driving?

---

[3] We note the PennDOT driver's license record has been included in the certified record.

IV.    Did the trial court abuse its discretion by finding Appellant guilty as to Driving Under the Influence-Controlled Substance, in that it was against the weight of the evidence to convict Appellant of the crime, in that the Commonwealth failed to prove an element of the crime that the Appellant was rendered incapable of safely driving when Appellant turned around prior to a DUI checkpoint and there was no evidence of bad driving?

V.    Did the trial court abuse its discretion by finding Appellant guilty as to Driving Under the Influence-Controlled substance, in that there was insufficient evidence to convict Appellant of the crime, that Appellant was under the influence of a controlled substance when there was no BAC test and a search revealed no evidence of drug activity?

VI.    Did the trial court abuse its discretion in finding Appellant guilty as to Driving Under the Influence-Controlled Substance, in that it was against the weight of the evidence to convict Appellant of the crime, in that the Commonwealth failed to prove an element of the crime, that the Appellant was under the influence of a controlled substance when there was no BAC test and a search revealed no evidence of drug activity?

Appellant's Brief at 7-8 (suggested answers omitted).

Preliminarily, we address Appellant's third and fifth issues, which present challenges to the sufficiency of the evidence supporting Appellant's conviction for DUI controlled substance-impaired ability under 75 Pa.C.S.A. § 3802(d)(2).[4] Specifically, Appellant contends the evidence was insufficient to sustain his conviction under Subsection 3802(d)(2) since there was no evidence of impaired driving, no physical evidence related to drug use

_____

[4] Since a successful sufficiency of the evidence claim warrants discharge on the pertinent crime, we shall address this issue first. **See Commonwealth v. Torrito**, 67 A.3d 29, 33 (Pa.Super. 2013) (*en banc*).

- 8 -

discovered in Appellant's vehicle, and no evidence of a controlled substance in Appellant's blood.

It is well settled:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all of the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Gause*, 164 A.3d 532, 540-41 (Pa.Super. 2017) (*en banc*) (citation omitted).

Although the finder of fact may make reasonable inferences from the testimony presented, the "inferences must flow from facts and circumstances proven in the record, and must be of such volume and quality as to overcome the presumption of innocence and satisfy the [fact-finder] of an accused's guilt beyond a reasonable doubt." *Commonwealth v. Scott*, 597 A.2d 1220, 1221 (Pa.Super. 1991). "The trier of fact cannot base a conviction on conjecture and speculation and a verdict which is premised on suspicion will

fail even under the limited scrutiny of appellate review." ***Id***. Finally, "[b]ecause evidentiary sufficiency is a question of law, our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Diamond***, 623 Pa. 475, 83 A.3d 119, 126 (2013).

Appellant was convicted of violating 75 Pa.C.S.A. § 3802(d)(2), which provides that "[a]n individual may not drive, operate or be in actual physical control of the movement of a vehicle" when "[t]he individual is under the influence of a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle."  75 Pa.C.S.A. § 3802(d)(2).  Therefore, to convict a defendant under this section, the Commonwealth must establish three elements: 1) that the defendant drove; 2) while under the influence of a controlled substance; and 3) to a degree that impairs the defendant's ability to drive safely. ***Commonwealth v. Griffith***, 613 Pa. 171, 32 A.3d 1231, 1239 (2011).

Evidence of consumption of a drug, standing alone, is insufficient to prove impairment. ***Commonwealth. v. Etchison***, 916 A.2d 1169, 1172 (Pa.Super. 2007).  Instead, impairment evidence should be drawn from the totality of the factual circumstances. ***Commonwealth. v. DiPanfilo***, 993 A.2d 1262 (Pa.Super. 2010). Contrary to Appellant's assertion, our Supreme Court has recognized that Subsection 3802(d)(2) "does not require that a drug be measured in the defendant's blood." ***Griffith***, ***supra***, 32 A.3d at 1238.

Further, we note there is no "mandatory requirement for expert testimony to establish that the defendant's inability to drive safely was caused by ingestion of a drug[.]" *Id.* at 1239.

In the case *sub judice*, Appellant does not dispute that he was driving, operating, or in actual physical control of the movement of his vehicle on July 27, 2020, during the traffic stop at issue. Rather, he contends the Commonwealth did not present sufficient evidence establishing he was under the influence of a drug to a degree that impaired his ability to safely drive, operate, or be in actual physical control of the movement of his vehicle.

Here, the trial court specifically found Trooper Nowicki's testimony credible regarding Appellant driving under the influence of marijuana to a degree that impaired his ability to drive safely. *See* Trial Court Opinion, filed 9/28/22, at 11. Trooper Nowicki testified he observed Appellant make a U-turn, drive away from the officers/checkpoint at a high rate of speed, and make a left hand turn from Woodland Drive onto Meadowside Drive without using a turn signal. He testified Appellant led the police on a high-speed chase, and after Appellant stopped his vehicle, Trooper Nowicki immediately detected the odor of marijuana, which grew stronger as he approached Appellant's vehicle. Appellant admitted to Trooper Nowicki that he had smoked marijuana in the hours prior to driving. Further, Trooper Nowicki testified Appellant could not adequately perform field sobriety tests. He specifically testified that "based upon [his] training and experience as well as

the interview and observations on [the] scene,…[Appellant] was unable to safely operate a motor vehicle." N.T., 4/26/22, at 45. Based on the aforementioned, we agree with the trial court that the Commonwealth presented sufficient evidence to sustain Appellant's conviction under 75 Pa.C.S.A. § 3802(d)(2), and therefore, we find no merit to Appellant's sufficiency claims.

Next, we address Appellant's fourth and sixth issues in which Appellant contends the trial court's verdict as to his DUI conviction is against the weight of the evidence.[5] Specifically, Appellant contends there was no credible evidence he was under the influence of a controlled substance to a degree that impaired his ability to drive safely.

Initially, we note that, in his fourth and sixth issues, Appellant conflates the issues of sufficiency and weight of the evidence. We remind Appellant that sufficiency and weight claims are clearly distinct. *See Commonwealth v. Widmer*, 560 Pa. 308, 744 A.2d 745 (2000) (discussing the distinctions between a claim challenging sufficiency of the evidence and a claim the verdict is against weight of the evidence). "A true weight of the evidence challenge concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be believed." *Commonwealth v. Charlton*, 902 A.2d 554, 561 (Pa.Super. 2006) (quotation omitted).

_____

[5] Although set forth as separate issues, we note the argument sections for Appellant's fourth and sixth issues are nearly identical.

To the extent Appellant presents a proper weight of the evidence claim on appeal, we note the following legal precepts.[6]

"The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none[,] or some of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Talbert*, 129 A.3d 536, 545 (Pa.Super. 2015) (quotation marks and quotation omitted). Resolving contradictory testimony and questions of credibility are matters for the finder of fact. *Commonwealth v. Hopkins*, 747 A.2d 910, 917 (Pa.Super. 2000). It is well-settled that we cannot substitute our judgment for that of the trier of fact. *Talbert*, *supra*.

Moreover, appellate review of a weight claim is a review of the trial court's exercise of discretion in denying the weight challenge raised in the lower court; this Court does not review the underlying question of whether the verdict is against the weight of the evidence. *See id.*

_____

[6] We note that challenges to the weight of the evidence must be raised with the trial court orally at any time before sentencing, by written motion at any time before sentencing, or in a post-sentence motion. *See* Pa.R.Crim.P. 607. Here, while Appellant raised his weight of the evidence claims in his Rule 1925(b) statement, he has not set forth that place in the record where he preserved his claims under Pa.R.Crim.P. 607.

In any event, assuming Appellant failed to preserve his weight claim under Rule 607, we decline to find waiver. Our review reveals that, after sentencing, the trial court failed to advise Appellant of his post-sentence and appellate rights. In such circumstances, we deem there to have been a "breakdown" such that we may excuse waiver of a weight of the evidence claim. *Commonwealth v. Patterson*, 940 A.2d 493 (Pa.Super. 2007); *Commonwealth v. Malovich*, 903 A.2d 1247 (Pa.Super. 2006).

> Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Id.* at 546 (quotation omitted). Furthermore, "[i]n order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." *Id.* (quotation marks and quotation omitted).

Here, in rejecting Appellant's weight of the evidence claim, the trial court relevantly indicated the following:

> Trooper Nowicki's uncontradicted testimony was sufficient to prove each material element of the crime beyond a reasonable doubt. Trooper Nowicki testified in a convincing manner. He was not uncertain, confused, self-contradictory, or evasive. He was trained in the investigation of individuals suspected of driving under the influence of drugs, and he had experience conducting such investigations. [The trial court,] therefore, find[s] Trooper Nowicki's testimony to be credible[.] [The trial court] find[s] that the verdict was not against the weight of the evidence.

Trial Court Opinion, filed 9/28/22, at 11 (citation to record omitted).

We conclude the trial court did not abuse its discretion in rejecting Appellant's challenge to the weight of the evidence. *Talbert*, *supra*. We note the trial court was free to determine the weight to be given to Trooper Nowicki's testimony. To the extent Appellant requests that we re-weigh the evidence and assess the credibility of the witness presented at trial, we decline

to do so as it is a task that is beyond our scope of review. ***See Commonwealth v. Collins***, 70 A.3d 1245, 1251 (Pa.Super. 2013) (stating that "[a]n appellate court cannot substitute its judgment for that of the finder of fact"). Accordingly, we find no merit to Appellant's weight of the evidence claims.

We next address Appellant's first and second issues in which he contends the suppression court erred in denying his pre-trial suppression motion. Specifically, in his first issue, Appellant contends there was no legitimate basis for the police to stop his vehicle. In his second issue, Appellant contends he was subjected to custodial interrogation without ***Miranda*** warnings when Trooper Nowicki asked him "about drug use[.]" Appellant's Brief at 14.

We address Appellant's suppression issues mindful of the following standard and scope of review:

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. We are bound by the suppression court's factual findings so long as they are supported by the record; our standard of review on questions of law is *de novo*. Where, as here, the defendant is appealing the ruling of the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted. Our scope of review of suppression rulings includes only the suppression hearing record and excludes evidence elicited at trial.

***Commonwealth v. Yandamuri***, 639 Pa. 100, 159 A.3d 503, 516 (2017) (citations omitted).

As it pertains to Appellant's issue regarding the stop of his motor vehicle, this Court has set forth the following legal precepts:

> A police officer has the authority to stop a vehicle when he or she has **reasonable suspicion** that a violation of the vehicle code has taken place, for the purpose of obtaining necessary information to enforce the provisions of the code. 75 Pa.C.S.A. § 6308(b). However, if the violation is such that it requires no additional investigation, the officer must have **probable cause** to initiate the stop. ***Commonwealth v. Feczko***, 10 A.3d 1285, 1291 (Pa.Super. 2010) [(*en banc*)].
>
> Put another way, if the officer has a legitimate expectation of investigatory results, the existence of reasonable suspicion will allow the stop—if the officer has no such expectations of learning additional relevant information concerning the suspected criminal activity, the stop cannot be constitutionally permitted on the basis of mere suspicion.

***Commonwealth v. Brown***, 64 A.3d 1101, 1105 (Pa.Super. 2013) (quoting ***Commonwealth v. Chase***, 599 Pa. 80, 960 A.2d 108, 115 (2008)) (bold in original).

In the case *sub judice*, the suppression court specifically found credible Trooper Nowicki's testimony that he stopped Appellant's vehicle because he failed to properly use turn signals. Trial Court Opinion, filed 9/28/22, at 4-5. As further investigation would not help to establish whether Appellant turned without using the required signal, Trooper Nowicki, as the suppression court properly determined, was required to have probable cause to initiate the stop. ***See Brown***, ***supra***.

> The police have probable cause where the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed. We evaluate probable

cause by considering all relevant facts under a totality of circumstances analysis.

*Commonwealth v. Hernandez*, 594 Pa. 319, 935 A.2d 1275, 1284 (2007) (quotation and citations omitted).

The statute governing use of signals provides in pertinent part as follows.

### § 3334. Turning movements and required signals

**(a) General rule.**—Upon a roadway no person shall turn a vehicle or move from one traffic lane to another or enter the traffic stream from a parked position unless and until the movement can be made with reasonable safety nor without giving an appropriate signal in the manner provided in this section.

75 Pa.C.S.A. § 3334(a), (b) (bold in original).

Here, in finding Trooper Nowicki had probable cause to stop Appellant's silver sedan based on a violation of Section 3334, the suppression court relevantly held as follows:

> [Trooper Nowicki] testified that he observed "a silver sedan turn around prior to the checkpoint. As the sedan was turning around, the sedan did not utilize its left turn signal in violation [of 75 Pa.C.S.A. § 3334(a)]." When Trooper Nowicki made this observation, it was "during daytime hours," there were no "adverse weather conditions," and he had a "clear line of sight" down the roadway. He then entered a patrol vehicle with another trooper and attempted to catch up to the sedan. Trooper Nowicki observed another violation of [Section 3334(a)] before he caught up to the sedan, testifying "[W]hen the vehicle turned left from Woodland Drive onto Meadowside Road, [Appellant] didn't utilize his turn signal[.]"
>
> ***
>
> Trooper Nowicki consistently testified that he observed Appellant turn a vehicle twice without giving an appropriate signal

- 17 -

pursuant to 75 Pa.C.S.A. § 3334(a). Trooper Nowicki therefore had probable cause to stop Appellant's vehicle.

Trial Court Opinion, filed 9/28/22, at 4-6 (citations to record omitted) (footnote omitted).

We agree with the trial court's sound reasoning. After viewing the traffic violations, Trooper Nowicki unquestionably possessed facts to warrant belief by any reasonable person that Appellant violated Section 3334(a) of the vehicle code. **Hernandez**, **supra**. Thus, Trooper Nowicki had probable cause to stop Appellant's vehicle.[7]

We note that we find unpersuasive Appellant's argument the troopers unconstitutionally stopped his silver sedan solely because he failed to go through the safety checkpoint. As Appellant correctly notes, our Supreme Court has held that "failing to go through [a] roadblock in and of itself…provides no basis for police intervention." **Commonwealth v. Scavello**, 557 Pa. 429, 734 A.2d 386, 388 (1999). However, Appellant fails to recognize that our Supreme Court has further held that if the "[p]olice should observe a violation of the Motor Vehicle Code or have a reasonable suspicion that the vehicle which is avoiding the roadblock is involved in criminal conduct, such observation or suspicion, which can be articulated with

_____

[7] Trooper Nowicki further testified that, after Appellant made the U-turn without using a turn signal, Appellant sped off at a high rate of speed. Because we have determined that Appellant's violation of 75 Pa.C.S.A. § 3334(a) was a sufficient basis for the traffic stop, we need not consider the issue further.

particularity, would be the basis for a vehicle stop." *Id.* Here, the suppression court specifically found, and the record supports the court's factual finding, that Trooper Nowicki observed a turn signal violation during the time Appellant avoided the checkpoint. Thus, there is no merit to Appellant's claim.

As it pertains to Appellant's issue that he was subjected to custodial interrogation without *Miranda* warnings when Trooper Nowicki asked him "about drug use," the following relevant legal precepts apply.

Initially, we note the courts have recognized there are three levels of interaction between the police and citizens: (1) a mere encounter, (2) an investigative detention, and (3) a custodial detention. *Commonwealth v. Clinton*, 905 A.2d 1026, 1030 (Pa.Super. 2006). Thus, we have stated:

> A mere encounter can be any formal or informal interaction between an officer and a citizen, but will normally be an inquiry by the officer of a citizen. The hallmark of this interaction is that it carries no official compulsion to stop or respond.
>
> In contrast, an investigative detention, by implication, carries an official compulsion to stop and respond, but the detention is temporary, unless it results in the formation of probable cause for arrest, and does not possess the coercive conditions consistent with a formal arrest. Since this interaction has elements of official compulsion it requires reasonable suspicion of unlawful activity. In further contrast, a custodial detention occurs when the nature, duration and conditions of an investigative detention become so coercive as to be, practically speaking, the functional equivalent of an arrest.

*Commonwealth v. Jones*, 874 A.2d 108, 116 (Pa.Super. 2005) (citations omitted).

It is long-settled that *Miranda* warnings are only required for the third-

level interaction, *i.e.*, custodial interrogation. ***Commonwealth v. Smith***, 575 Pa. 203, 836 A.2d 5 (2003). However, it is equally settled law that a motor vehicle stop is generally a second-level interaction, an investigative detention. ***Clinton***, 905 A.2d at 1030. During a traffic stop, it is inherently reasonable for an officer to order the driver of the vehicle to alight from the car. ***Commonwealth v. Brown***, 654 A.2d 1096 (Pa.Super. 1995). Further, the officer "may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions." ***Commonwealth v. Wright***, 224 A.3d 1104, 1109 (Pa.Super. 2019). For their safety, police officers may handcuff individuals during an investigative detention. ***Id.*** (quotation and quotation marks omitted).

An investigative detention may develop into a custodial detention. ***Id.*** "The key difference between an investigative and a custodial detention is that the latter involves such coercive conditions as to constitute the functional equivalent of an arrest." ***Commonwealth v. Gonzalez***, 979 A.2d 879, 887 (Pa.Super. 2009) (quotation and quotation marks omitted). The court considers the totality of the circumstances to determine if an encounter is investigatory or custodial. ***See Commonwealth v. Goldsborough***, 31 A.3d 299, 306 (Pa.Super. 2011).

> The numerous factors used to determine whether a detention has evolved into an arrest include the cause for the detention, the detention's length, the detention's location, whether the suspect was transported against his or her will,

whether physical restraints were used, whether the police used or threatened force, and the character of the investigative methods used to confirm or dispel the suspicions of the police. [Moreover, we note] [c]ustodial interrogation has been defined as questioning initiated by the police after a person has been taken into custody or otherwise deprived of his or her freedom of action in any significant way. Further, an interrogation occurs when the police should know that their words or actions are reasonably likely to elicit an incriminating response from the suspect.

*Clinton*, 905 A.2d at 1032 (citations omitted).

Here, Appellant argues the following:

After police saw Appellant's vehicle turn around, they pursued him with lights and sirens. Appellant pulled over for the trooper. This was not an investigatory stop. This stop placed Appellant in custodial detention[,] and he was not free to leave. When the trooper questioned Appellant, he did not tell him about his *Miranda* rights. Because of this, Appellant believed he was required to answer this trooper. Appellant's answer to [the] question about drug use, caused the Trooper to pursue the DUI charge.

Appellant's Brief at 13.

Initially, we remind Appellant that, contrary to his assertion, a motor vehicle stop is generally a second-level interaction, an investigative detention. *Clinton*, 905 A.2d at 1030. Thus, in this case, when Appellant was pulled over by the troopers, he was initially subjected to an investigative detention. *See id.* Appellant does not point to a specific statement at issue or indicate when the investigative detention may have elevated to a custodial detention prior to the police eliciting incriminating statements "about drug use[.]" Appellant's Brief at 14.

In any event, in explaining the reasons it rejected Appellant's claim, the trial court relevantly indicated the following:

> In this case, the initial justification for the traffic stop was Appellant's failure to use his turn signal. When the vehicle stopped, Trooper Nowicki approached the vehicle with three other officers. One of the officers immediately [removed the keys from Appellant's vehicle.]…Trooper Nowicki asked Appellant why Appellant had turned around and asked Appellant why he was in the area. Trooper Nowicki then asked Appellant to get out of the vehicle[, and after Appellant brought up the issue of marijuana, the officer] asked Appellant how recently Appellant had smoked. Appellant stated that he had smoked about four hours earlier.
>
> ***
>
> [After] the field sobriety tests, Trooper Nowicki asked Appellant if Appellant had ever used any drugs other than marijuana, and Appellant again admitted to using marijuana. Trooper Nowicki then read Appellant the [implied consent warning] form and informed Appellant that he was under arrest. A few minutes later, Appellant was placed in handcuffs.
>
> Courts determine whether a person is in custody for **Miranda** purposes…on a case-by-case basis with due regard to the particular facts involved. In this case, various factors support the conclusion that Appellant was not in custody [when he was asked about his drug use]. The traffic stop was brief: Only 15 minutes elapsed from the time Appellant was stopped to the time Appellant was placed under arrest. Appellant was not physically restrained or placed in a patrol car….Police asked if Appellant was willing to perform field sobriety tests. The stop occurred on a public roadway. At no point did police display weapons to obtain Appellant's compliance. Appellant was asked why he was in the area, whether he had used drugs, and was asked to perform field sobriety tests. Asking a "modest number of questions" and requesting that a suspect perform field sobriety tests does not amount to custodial interrogation.
>
> It is true…the officers took [Appellant's] keys at the beginning of the stop. That does not mean, however, that Appellant was in custody. "[C]ustodial detention involves something more than mere exercise of control over the suspect's freedom of movement." [**Commonwealth v. Douglass**, 539 A.2d 412, 419 (Pa.Super. 1988)].

- 22 -

Trial Court Opinion, filed 9/28/22, at 7-8 (citations to record omitted) (quotation marks, quotation, and citations omitted).

We agree with the trial court's sound reasoning.[8] Accordingly, we conclude the trial court properly denied Appellant's motion to suppress on this basis.

For all of the foregoing reasons, we affirm Appellant's judgment of sentence.

Affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/15/2023

---

[8] Moreover, we agree with the trial court that, assuming, *arguendo*, the trial court erred in failing to suppress Appellant's statements regarding his drug use, such error was harmless. "Even without Appellant's admission of drug use,…the Commonwealth's [uncontradicted evidence overwhelmingly] proved beyond a reasonable doubt that Appellant was guilty of [DUI]." Trial Court Opinion, filed 9/28/22, at 9 n.9. **See Commonwealth v. Mitchell**, 576 Pa. 258, 839 A.2d 202 (2003) (holding that a reviewing court will find an error harmless where the uncontradicted evidence of guilt is overwhelming, so that by comparison the error is insignificant).