J-A21016-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| EUGENE WATSON | : | |
| | : | |
| Appellant | : | No. 1945 EDA 2023 |

Appeal from the Judgment of Sentence Entered June 9, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0003348-2022

BEFORE: KUNSELMAN, J., NICHOLS, J., and BECK, J.

MEMORANDUM BY NICHOLS, J.:         **FILED DECEMBER 23, 2024**

Appellant Eugene Watson appeals from the judgment of sentence imposed following his convictions for aggravated assault, possession of a firearm prohibited, criminal conspiracy, possessing an instrument of crime (PIC), carrying a firearm in public in Philadelphia, simple assault, and recklessly endangering another person (REAP).[1] On appeal, Appellant challenges the weight of the evidence and the discretionary aspects of his sentence. After review, we affirm Appellant's convictions but vacate the judgment of sentence and remand for resentencing.

The trial court summarized the relevant facts of this case as follows:

> On April 22, 2021, [T.A. (the victim)], was at his house . . . [with M.M. and nine-year old K.A.]. Around 4:00 PM, [K.A.'s mother] arrived at the house, appearing to be alone, and immediately went

_____

[1] 18 Pa.C.S. §§ 2702(a)(1), 6105(a)(1), 903, 907(a), 6108, 2701(a), and 2705, respectively.

upstairs to the bathroom. [K.A.] testified that when the two men entered the house, they were wearing all black clothing and ski masks. [K.A.] recognized one of the men as Appellant[FN12] from his eyes and his voice, and [K.A.] said "What's up, . . . Uncle Gene," to which the man responded to [K.A.] and said, "What's up?"[FN13]

[FN12] [K.A.] testified that he recognized Appellant as one of the men because sometimes when he [was] at his [mother's] house, Appellant came over wearing a black ski mask and then [took] it off.

[FN13] Identification that one of the men inside the house was, in fact, [Appellant] can be inferred through the response.

Following this interaction, [K.A.'s mother] came back downstairs and took [K.A.] to the car which was parked in front of the house on the street. While waiting in the car, [K.A.] testified that he saw Appellant in the "alleyway" aiming a gun down the alleyway. The evidence as to whether [K.A.] saw Appellant actually shoot the gun is conflicting. At the preliminary hearing and in his statement to Detective Conway, [K.A.] testified that he saw Appellant shoot the gun one time and heard only one shot. However, at trial, [K.A.] testified that he was not sure if Appellant actually fired the gun, but he did see him aim the gun and heard two gunshots. While Appellant never apparently said anything directly to [K.A.'s mother], [K.A.] testified that Appellant waved his hand towards [K.A.'s mother's] car and "flagged her off" once the gunshots began.

At the same time that the two men entered his house, [the victim] was upstairs in his room and heard the dog barking from downstairs. He testified that he went downstairs to see who the dog was barking at, and it was at that time that he saw two men talking to [K.A.'s mother and K.A.] was trying to calm the dog down. As [the victim] walked downstairs, one of the two men said, "let me holler at you," which [the victim] took to mean that the man wanted to talk to him. [The victim] testified that as he walked over to talk, he saw the man pull a gun out of his sleeve. Immediately following, the man hit [the victim] in the head and on the face with the gun. [The victim] and the unknown man began to tussle, at which point the gun went off and shot [the victim] in the chest through his left-side chest and out his lower back.[FN14] [The victim] had simultaneously pulled out his own gun

and began shooting back at the masked man. [The victim] testified that as they were both shooting at one another, the masked man ran into the dining room, jumped over the couch, and threw something appearing to be a grenade of sorts at [M.M.] . . . , which caused a great deal of smoke. At the time of the explosion, [the victim] ran up the stairs back to his bedroom while continuing to shoot at the masked man, and [M.M.] followed up the stairs after him.

> [FN14] [The victim] sustained injuries of three fractured ribs, a collapsed lung, and an open wound for four months.

Upon investigating the crime scene, Detective Clair testified that they found a firearm, two fired cartridge casings (FCC's) and one projectile. The firearm was found upstairs in [the victim]'s bedroom with blood nearby, and the FCC's were consistent with belonging to that same firearm. The projectile, which was embedded in a rug on the first floor, had gone through a wall and was presumed by detectives to be from the shooter. In addition, there were many pieces of hard, orange plastic scattered throughout the living room floor, which the fire department deemed was an "improvised explosive device." All items recovered and photographed at the scene, and subsequently presented as evidence at trial, were consistent with [the victim's] version of the events as they occurred in this case.

The evidence adduced at trial did not reveal any specific motive for the events that occurred that day. However, trial testimony from [the victim] revealed that his brother, [H.A.,] had custody of [K.A.], and [H.A.] and [K.A.'s mother] had an argument earlier that day at the house. [H.A.] was not present at the incident, but [the victim] testified that he thought [K.A.'s mother] set him up.

At the time of the incident, [the victim] had a license to carry a firearm. Appellant was not licensed to carry a firearm at the time of the shooting because he is ineligible to possess a firearm under [18 Pa.C.S. §] 6105[.]

Trial Ct. Op., 11/15/23, at 3-5 (some footnotes omitted and formatting altered).

Following a bench trial, the trial court found Appellant guilty of the aforementioned charges. On June 9, 2023, the trial court sentenced Appellant

- 3 -

to a term of four and one-half to twelve years of incarceration for aggravated assault, four and a half to twelve years of incarceration for possession of a firearm prohibited, and a term of four and one-half to twelve years of incarceration for conspiracy. ***See*** Sentencing Order, 6/9/23, at 1.[2] The trial court ordered these sentences to run concurrently. ***See id.*** This resulted in an aggregate sentence of four and one-half to twelve years of incarceration. ***See id.***

On June 15, 2023, Appellant filed timely post-sentence motions challenging the weight of the evidence, requesting a new trial, and seeking reconsideration of his sentence. After the trial court denied Appellant's motions, Appellant filed a timely notice of appeal and a court-ordered Rule 1925(b) statement. The trial court filed a Rule 1925(a) opinion addressing Appellant's claims.

On appeal, Appellant raises the following issues:

1. Did the [trial] court abuse its discretion in denying [Appellant's] motion for a new trial where the verdict was so against the weight of the evidence as to shock the conscience?

2. Did the [trial] court err at sentencing by applying the deadly weapon used enhancement rather than the deadly weapon possessed enhancement where the evidence showed only that [Appellant] possessed a firearm outside a home while another person committed a shooting inside?

Appellant's Brief at 3.

_____

[2] Simple assault merged with aggravated assault for purposes of sentencing, and the trial court imposed no further penalty on the remaining charges. ***See*** Sentencing Order, 6/9/23, at 1.

## Weight of the Evidence

Appellant first challenges the weight of the evidence. *Id.* at 17. Appellant argues that there was no physical evidence connecting him to the shooting, and he claims that the only testimony linking Appellant to the crimes was K.A.'s speculative testimony. *Id.* Appellant contends that K.A.'s testimony was uncorroborated, and he asserts that it is "preposterous to believe that" K.A. was able to identify a man he met only one month earlier and "absurd to suggest that a child could recognize the voice of a brand-new acquaintance based solely on the words 'what's up,' uttered as a dog barked loudly in the child's ear." *Id.* at 20.

This Court has explained:

The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none, or some of the evidence and to determine the credibility of the witnesses. Resolving contradictory testimony and questions of credibility are matters for the finder of fact. It is well-settled that we cannot substitute our judgment for that of the trier of fact.

Moreover, appellate review of a weight claim is a review of the trial court's exercise of discretion in denying the weight challenge raised in the lower court; this Court does not review the underlying question of whether the verdict is against the weight of the evidence.

Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

Furthermore, in order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court.

*Commonwealth v. Spence*, 290 A.3d 301, 311 (Pa. Super. 2023) (citations omitted and formatting altered).

Here, the trial court addressed Appellant's weight claim as follows:

In the instant case, the verdict against Appellant is consistent with the evidence. [T.A.] testified that there had been an altercation earlier that morning between [K.A.'s mother and H.A.], including testimony that [K.A.'s mother] spoke negatively of the family. [T.A.'s] testimony of the events of that afternoon were corroborated by the physical evidence recovered at the scene, as well as his severe injuries from being shot directly in the chest.

Additionally, [K.A.] identified Appellant as having been one of the two masked men who came to his house that day. While his testimony wavered regarding how many shots he heard, [K.A.'s] statements were consistent all three times, including his interview with detectives, his testimony at the preliminary hearing, and his testimony at trial. First, [K.A.] was consistent in saying that Appellant was present and involved. [K.A.] recognized Appellant's eyes under the mask and his voice, so much so that [K.A.] said "what's up . . . Uncle Gene" when Appellant walked in the house. [K.A.] also was consistent in saying that Appellant waved[-off] [K.A.'s mother] in her car just as the shooting began. Finally, [K.A.] was consistent in saying that he saw Appellant in the alleyway next to the house, aiming a gun at the same time he heard gun shots. This [c]ourt's decision to credit the Commonwealth's eyewitness testimony under such circumstances does not "shock the consci[ence]" and this [c]ourt's denial of Appellant's weight of the evidence claim does not, therefore, constitute an abuse of discretion.

Trial Ct. Op., 11/15/23, at 6-7 (some formatting altered).

After review, we discern no abuse of discretion by the trial court in denying Appellant's weight claim. *See Spence*, 290 A.3d at 311. The trial

court, which was sitting as the finder of fact, determined the credibility of the witnesses, and it was free to believe some, all, or none of the evidence presented. *See id.* On this record, we cannot conclude that the trial court committed an abuse of discretion in finding that the verdict did not shock its conscience. *See id.* Accordingly, Appellant is not entitled to relief on his weight-of-the-evidence claim. *See id.*

**Sentencing**

Appellant also argues that the trial court abused its discretion when it applied the deadly weapon used sentencing enhancement instead of the deadly weapon possessed sentencing enhancement. Appellant's Brief at 22-23. Appellant contends that, "at most," the record supports the conclusion that Appellant possessed the firearm, but it does not support a finding that Appellant used the firearm. *See id.* at 24-25. Appellant asks this Court to credit the trial court's conclusion that it should have applied only the deadly weapon possessed enhancement,[3] vacate his sentence, and remand for resentencing. *See id.* at 26.

The Commonwealth acknowledges that the trial court agreed that this case should be remanded for resentencing under the deadly weapon possessed enhancement rather than the deadly weapon used enhancement. *See* Commonwealth's Brief at 10-11. However, the Commonwealth contends that regardless of whether deadly weapon used enhancement was applied,

_____

[3] We note that the trial court agrees that this case should be remanded for resentencing. *See* Trial Ct. Op., 11/15/23, at 7.

the sentence imposed was consistent with the sentencing guidelines under either the deadly weapon used or deadly weapon possessed levels. *Id.* at 11.

Appellant's claim concerning the application of the sentencing enhancement for deadly weapon possessed, as opposed to the deadly weapon used, presents a challenge to the discretionary aspects of his sentence. *See Commonwealth v. Tavarez*, 174 A.3d 7, 9-10 (Pa. Super. 2017). "[C]hallenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right." *Commonwealth v. Derry*, 150 A.3d 987, 991 (Pa. Super. 2016) (citations omitted). Before reaching the merits of such claims, we must determine:

> (1) whether the appeal is timely; (2) whether Appellant preserved his issues; (3) whether Appellant's brief includes a [Pa.R.A.P. 2119(f)] concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is inappropriate under the sentencing code.

*Commonwealth v. Corley*, 31 A.3d 293, 296 (Pa. Super. 2011) (citations omitted).

"To preserve an attack on the discretionary aspects of sentence, an appellant must raise his issues at sentencing or in a post-sentence motion. Issues not presented to the sentencing court are waived and cannot be raised for the first time on appeal." *Commonwealth v. Malovich*, 903 A.2d 1247, 1251 (Pa. Super. 2006) (citations omitted); *see also* Pa.R.A.P. 302(a)

(stating that "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal").

"The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." **Commonwealth v. Battles**, 169 A.3d 1086, 1090 (Pa. Super. 2017) (citation omitted). "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." **Commonwealth v. Grays**, 167 A.3d 793, 816 (Pa. Super. 2017) (citation omitted).

Here, the record reflects that Appellant preserved his issue by raising it in his post-sentence motion, filing a timely notice of appeal and a court-ordered Rule 1925(b) statement, and including a Rule 2119(f) statement in his brief. **See Corley**, 31 A.3d at 296. Further, we conclude that Appellant's claim raises a substantial question for our review. **See Commonwealth v. Phillips**, 946 A.2d 103, 112 (Pa. Super. 2008) (stating that "[a] substantial question is raised where an appellant alleges his sentence is excessive due to the sentencing court's error in applying the deadly weapon enhancement" (citation omitted)). Therefore, we will review the merits of Appellant's issue.

Our well-settled standard of review is as follows:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the

- 9 -

sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

Additionally, our review of the discretionary aspects of a sentence is confined by the statutory mandates of 42 Pa.C.S. § 9781(c) and (d). Subsection 9781(c) provides:

The appellate court shall vacate the sentence and remand the case to the sentencing court with instructions if it finds:

(1) the sentencing court purported to sentence within the sentencing guidelines but applied the guidelines erroneously;

(2) the sentencing court sentenced within the sentencing guidelines but the case involves circumstances where the application of the guidelines would be clearly unreasonable; or

(3) the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable.

In all other cases the appellate court shall affirm the sentence imposed by the sentencing court.

42 Pa.C.S. § 9781(c).

In reviewing the record, we consider:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant.

(2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation [(PSI)].

(3) The findings upon which the sentence was based.

(4) The guidelines promulgated by the commission.

42 Pa.C.S. § 9781(d).

**Commonwealth v. Raven**, 97 A.3d 1244, 1253-54 (Pa. Super. 2014) (some citations omitted and some formatting altered).

Further, deadly weapon enhancements apply when a deadly weapon is possessed or when a deadly weapon is used in the commission of crime. ***See*** 204 Pa. Code § 303.10(a)(1), (2). The deadly weapon sentencing enhancement provides, in relevant part, as follows:

(a) Deadly Weapon Enhancement, as required by 42 Pa.C.S. § 2154.(b)(3).

(1) Except for those sentenced pursuant to 18 Pa.C.S. § 1102.1 (relating to sentence of persons under the age of 18 for murder, murder of an unborn child and murder of a law enforcement officer), when the court determines that the offender **possessed** a deadly weapon during the commission of the current conviction offense, the court shall consider the DWE/Possessed Matrix (§ 303.17(a)). An offender has possessed a deadly weapon if any of the following were on the offender's person or within his immediate physical control:

(i) Any firearm, (as defined in 42 Pa.C.S. § 9712) whether loaded or unloaded . . . .

\* \* \*

(2) Except for those sentenced pursuant to 18 Pa.C.S. § 1102.1 (relating to sentence of persons under the age of 18 for murder, murder of an unborn child and murder of a law enforcement officer), when the court determines that the offender **used** a deadly weapon during the commission of the current conviction offense, the court shall consider the DWE/Used Matrix (§ 303.17(b)). An offender has used a deadly weapon if any of the following were employed by the offender in a way that threatened or injured another individual:

(i) Any firearm, (as defined in 42 Pa.C.S. § 9712) whether loaded or unloaded[.]

204 Pa. Code § 303.10(a)(1)(i), (a)(2)(i) (emphases added and some formatting altered).

We recognize that the trial court agreed with Appellant's argument concerning the application of the sentencing enhancement and explained:

> After further review, this court recommends that this issue be remanded back to the trial court for sentencing for application of the deadly weapon possessed enhancement as opposed to the deadly weapon used enhancement that was originally applied at sentencing.

Trial Ct. Op., 11/15/23, at 7 (footnotes omitted and formatting altered).

On this record, we agree with the trial court's conclusion because the notes of testimony reflect that Appellant **possessed** a firearm, but there was no testimony nor competent evidence at trial that Appellant **used** the firearm as defined in 204 Pa. Code § 303.10(a)(2)(i). *See* N.T., 1/17/23, at 18-20, 49-50; *see also* Trial Ct. Op., 11/15/23, at 3. Therefore, we agree that the record does not support the application of the deadly weapon used enhancement. Accordingly, we are constrained to conclude that the trial court erroneously applied the enhancement, and we remand this matter for resentencing. *See* 42 Pa.C.S. § 9781(c)(1) (providing that the appellate court shall vacate the sentence and remand if it finds that the trial court intended to sentence the offender within the sentencing guidelines but applied the guidelines erroneously); *Tavarez*, 174 A.3d at 11-13 (remanding for resentencing where the trial court abused its discretion in applying the deadly weapon used enhancement rather than the deadly weapon possessed enhancement).

For these reasons, we affirm Appellant's convictions, vacate Appellant's judgment of sentence, and remand for resentencing. ***See Commonwealth v. Thur***, 906 A.2d 552, 569 (Pa. Super. 2006) (stating that if our disposition upsets the overall sentencing scheme of the trial court, we must remand so that the trial court can restructure its sentencing plan).

Judgment of sentence vacated. Case remanded for resentencing. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/23/2024