J-S21013-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| WESLEY D. ALEXANDER | : | No. 1656 MDA 2022 |

Appeal from the Order Entered October 24, 2022
In the Court of Common Pleas of Berks County Criminal Division at
No(s): CP-06-CR-0001153-2022

BEFORE:   BOWES, J., NICHOLS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY BOWES, J.:                **FILED: SEPTEMBER 12, 2023**

The Commonwealth appeals from the trial court's order suppressing evidence and granting Wesley D. Alexander's request for a writ of *habeas corpus*.  We reverse in part, vacate in part, and remand for proceedings consistent with this memorandum.

We begin with a summary of the events giving rise to Appellee's charges.  On September 6, 2021, Pennsylvania State Police Trooper Nicholas Fischer was conducting speed enforcement with a radar device on Route 78 westbound in Greenwich Township, Berks County.  Trooper Fischer saw a silver SUV approach and the radar device indicated the SUV was traveling at 85 miles per hour in a marked 50 mile-per-hour zone.  He followed the SUV and conducted a traffic stop.  ***See*** N.T. Suppression, 7/27/22, at 7-8.

_____

[*] Retired Senior Judge assigned to the Superior Court.

Appellee, the driver of the vehicle, complied and stopped his vehicle. Trooper Fischer approached, observing Appellee in the driver's seat and a woman in the passenger seat, and smelling a strong odor of burnt marijuana coming from the vehicle.  *Id*. at 8, 11.  The trooper identified himself to Appellee, advised him that the reason for the stop was speeding, and asked him for his driver's license and registration.  *Id*. at 9-10.  Appellee did not have identification but provided Trooper Fischer with his name and date of birth.  Based upon the marijuana smell, the trooper asked Appellee if he had smoked recently.   *Id*. at 10-11.   Appellee responded affirmatively, acknowledging that he had smoked marijuana at a rest stop approximately forty-five minutes before he was pulled over.  *Id*. at 11.

Trooper Fischer returned to his vehicle to run Appellee's identifying information through his license check and determined that his driver's license was suspended.  *Id*. at 10-11.  Suspecting that Appellee may be under the influence, the trooper returned to Appellee's vehicle and asked him to exit the vehicle for field sobriety testing.  *Id*. at 11-13.  The tests revealed signs of impairment.  *Id*. at 17.  Therefore, Trooper Fischer placed Appellee under arrest for suspicion of driving under the influence ("DUI"), based upon the speeding, the odor of marijuana, signs of impairment, and his admission to smoking marijuana forty-five minutes prior to the traffic stop.  *Id*.  Following the arrest, Trooper Fischer transported Appellee to conduct a blood draw.

Based on the foregoing, Appellee was charged with three counts of DUI,[1] three counts of driving while operating privilege is suspended,[2] and exceeding maximum speed limits. Appellee filed an omnibus pretrial motion for relief, which included a motion to suppress and a request for issuance of a writ of *habeas corpus*. Particularly, the motion sought to suppress Appellee's admission that he had smoked marijuana about forty-five minutes prior to the traffic stop, as well as the subsequent blood test results, based on the argument that the purpose of the traffic stop had ended and "Trooper Fischer unlawfully detained [Appellee] and interrogated him without providing to [Appellee] a statement of his rights under **Miranda**.[3]" Omnibus Pre-Trial Motion, 6/10/22, at ¶¶ 22-25.

A suppression hearing was held on July 27, 2022, with Trooper Fischer as the sole witness for the Commonwealth; Appellee did not call any witnesses. The Commonwealth additionally introduced the motor vehicle recording of the traffic stop. The trial court issued its findings of fact and conclusions of law. The court found that Trooper Fischer did not give Appellee **Miranda** warnings before asking if he had smoked marijuana recently, and that considering totality of the circumstances, "a reasonable person would not

---

[1] Each of Appellee's DUI charges pertained to a different subsection and were graded as third offenses. **See** 75 Pa.C.S. §§ 3802(d)(1)(i), 3802(d)(2), 3802(d)(1)(iii).

[2] Again, Appellee's charges in this regard comprised three different subsections. **See** 75 Pa.C.S. §§ 1543(b)(1)(III), 1543(a), 1543(b)(1)(i).

[3] **Miranda v. Arizona**, 384 U.S. 436 (1966).

have felt free to leave nor not answer the trooper's questions." Findings of Fact and Conclusions of Law, 10/24/22, at 3-4. Thus, the court granted Appellee's suppression motion. Regarding the *habeas corpus* petition, the court granted that as to all charges save speeding because the Commonwealth did not present evidence of Appellee's blood test results or the status of his license suspension at the suppression hearing. *Id*. at 4-5.

The Commonwealth filed a timely notice of appeal, certifying therein, in accordance with Pa.R.A.P. 311(d), that the trial court's ruling terminated or substantially handicapped the prosecution. The Commonwealth complied with the court's order to file a concise statement pursuant to Pa.R.A.P. 1925(b). In lieu of a Rule 1925(a) opinion, the trial court conceded error as to the premature granting of Appellee's *habeas corpus* petition but directed this Court to its findings of fact and conclusions of law in support of its order granting Appellee's suppression motion. *See* Order, 2/27/23, at 2. The Commonwealth presents the following issues for our review:

A. Did the trial court respectfully err in suppressing statements made during a lawful traffic stop supported by reasonable suspicion and/or probable cause, as [Appellee] was not in custody when the statements were made?

B. Did the trial court respectfully err in granting the request for a writ of *habeas corpus* without permitting the Commonwealth to appeal from the adverse suppression ruling?

Commonwealth's brief at 4.

We first address the Commonwealth's claim that the trial court erred in suppressing statements made during the traffic stop. We review this challenge under the following standard of review:

> We review trial court suppression orders to determine whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. We are bound by the suppression court's factual findings so long as they are supported by the record. In reviewing an appeal by the Commonwealth of a suppression order, we may consider only the evidence from the defendant's witnesses along with the Commonwealth's evidence which remains uncontroverted. Our scope of review of suppression court factual findings is limited to the suppression hearing record. We, however, are not bound by a suppression court's conclusions of law; rather, when reviewing questions of law, our standard of review is *de novo* and our scope of review is plenary.

***Commonwealth v. Young***, 287 A.3d 907, 915-16 (Pa.Super. 2022) (citation omitted).

Here, there is no dispute as to the legality of the initial stop or the court's factual findings as to what happened thereafter. Rather, the dispute centers around the trial court's conclusion of law that the totality of the circumstances established Appellee was in custody at the time Trooper Fischer inquired about smoking marijuana, thereby mandating that he first give ***Miranda*** warnings, which he did not. Specifically, the Commonwealth argues that "[b]ecause this traffic stop was the classic investigative detention on a public highway, this interaction did not rise to the level of a custodial detention for ***Miranda*** purposes." Commonwealth's brief at 11. Accordingly, we are tasked with

deciding a legal question *de novo* based upon acceptance of the trial court's factual findings. ***Young***, ***supra*** at 915-16.

With that in mind, we set forth the following legal principles. "[T]here are three levels of interaction between the police and citizens: (1) a mere encounter, (2) an investigative detention, and (3) a custodial detention." ***Commonwealth v. Spence***, 290 A.3d 301, 314 (Pa.Super. 2023) (citation omitted).

> A mere encounter can be any formal or informal interaction between an officer and a citizen, but will normally be an inquiry by the officer of a citizen. The hallmark of this interaction is that it carries no official compulsion to stop or respond.
>
> In contrast, an investigative detention, by implication, carries an official compulsion to stop and respond, but the detention is temporary, unless it results in the formation of probable cause for arrest, and does not possess the coercive conditions consistent with a formal arrest. Since this interaction has elements of official compulsion it requires reasonable suspicion of unlawful activity. In further contrast, a custodial detention occurs when the nature, duration and conditions of an investigative detention become so coercive as to be, practically speaking, the functional equivalent of an arrest.

***Id***. (cleaned up).

It is well established that ***Miranda*** warnings are only required for custodial detentions, which are third-level interactions. ***See id***. Additionally, motor vehicle stops are generally considered investigative detentions, or second-level interactions. ***See id***. During traffic stops, "the officer may ask the detainee a moderate number of questions to determine his identity and to

try to obtain information confirming or dispelling the officer's suspicions." *Id*. (cleaned up). Police officers may even go as far as handcuffing individuals during an investigative detention for safety reasons without automatically escalating that interaction into a custodial detention. *See id*.

An investigative detention rises to the level of a custodial detention when it "involves such coercive conditions as to constitute the functional equivalent of an arrest." *Id*. (cleaned up). Numerous factors are considered by the court to determine the level of the encounter:

> [T]he cause for the detention, the detention's length, the detention's location, whether the suspect was transported against his or her will, whether physical restraints were used, whether the police used or threatened force, and the character of the investigative methods used to confirm or dispel the suspicions of the police.

*Id*. (cleaned up).

Here, the initial stop was based upon a speeding violation. It is well-settled that when "a vehicle is stopped for speeding, the officer must possess probable cause to stop the vehicle. This is so because when a vehicle is stopped, nothing more can be determined as to the speed of the vehicle when it was observed while traveling upon a highway." *Commonwealth v. Salter*, 121 A.3d 987, 993 (Pa.Super. 2015). Appellee was clocked at driving eighty-five miles per hour in a fifty-mile-per-hour zone, in violation of 75 Pa.C.S. § 3362(a)(3). Thus, Trooper Fischer had probable cause to believe that Appellee had violated a section of the Vehicle Code and, as noted above, nobody contests the legality of the initial stop. *See Spence*, *supra* at 312

("The police have probable cause where the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed.").

It was during the effectuation of this initial stop that the trooper smelled a strong odor of burnt marijuana emanating from the vehicle. We have held that "if there is a legitimate stop for a traffic violation[,] additional suspicion may arise before the initial stop's purpose has been fulfilled[ and,] then, detention may be permissible to investigate the new suspicions." *Commonwealth v. Wright*, 224 A.3d 1104, 1109 (Pa.Super. 2019) (cleaned up). Thus, the question before us is whether the continued stop constituted an investigatory detention supported by reasonable suspicion, or a custodial detention triggering Appellee's *Miranda* rights and rendering his response to the trooper's question suppressible.

The trial court concluded that at the time Trooper Fischer asked Appellee whether he had smoked marijuana recently, Appellee was subject to a custodial detention and, therefore, Trooper Fischer was required to first provide Appellee *Miranda* warnings. *See* Findings of Fact and Conclusions of Law, 10/24/22, at 4. The court came to this conclusion after it found that a reasonable person would not have felt free to leave or refuse to answer the trooper's questions. *Id*. For the reasons that follow, we disagree and conclude that additional suspicion arose before the conclusion of the initial stop, which permitted the continued stop as an investigative detention to

which no **Miranda** rights attached, and it did not evolve into a custodial detention prior to the trooper's questioning.

The strong odor of burnt marijuana, in conjunction with Appellee's speeding, provided the trooper with reasonable suspicion that another crime was occurring, namely, DUI. As part of his investigation into this potential crime, he was permitted to ask questions to attempt to confirm or dispel his suspicions. **See Spence**, **supra** at 314; **Commonwealth v. Dabney**, 274 A.3d 1283, 1286, 1292-93 (Pa.Super. 2022) (holding officer had reasonable suspicion to conduct field sobriety tests and probable cause to arrest for DUI where Dabney, the driver, was stopped for speeding, the officer smelled a strong odor of marijuana from within the vehicle, after asking the occupants to exit the vehicle the officer observed flakes of suspected marijuana in the vehicle and located suspected marijuana in the trunk, Dabney's eyes were red and dilated, and field sobriety tests indicated he may be impaired). Thus, the trooper's question did not transform this encounter into a custodial detention.

Although Appellee may not have felt free to leave, as concluded by the trial court, "custodial detention involves something more than mere exercise of control over the suspect's freedom of movement." **Spence**, **supra** at 316 (citation omitted). Appellee was not physically restrained, placed in custody, or transported from the scene before Trooper Fischer's question. Nor did the trooper display weapons or threaten force to obtain Appellee's compliance. Simply stated, there is no evidence that coercive conditions were present to

escalate the continuation of the traffic stop to a custodial detention. As a result, *Miranda* warnings were not required to be issued by Trooper Fischer before he asked Appellee if he had recently smoked marijuana. Accordingly, we reverse the decision of the trial court on this issue.

Next, we address the Commonwealth's claim that the trial court erred in granting Appellee's request for a writ of *habeas corpus* without first allowing the Commonwealth to appeal the suppression ruling. *See* Commonwealth's brief at 12. Generally, this Court "will review a grant or denial of a petition for writ of *habeas corpus* for abuse of discretion, but for questions of law, our standard of review is *de novo*, and our scope of review is plenary." *Commonwealth v. Merced*, 265 A.3d 786, 792 (Pa.Super. 2021) (cleaned up).

Here, the trial court found, after suppressing Appellee's admission of marijuana use and all evidence flowing thereafter, that "the Commonwealth failed to present evidence of [Appellee's] blood test results or evidence that [Appellee's] driver's license was suspended." Findings of Fact and Conclusions of Law, 10/24/22, at 4-5. Therefore, the court granted Appellee's request for a writ of *habeas corpus*. Notably, Appellee only petitioned for a writ of *habeas corpus* as to his DUI charges. Nonetheless, the court dismissed all charges except speeding. The counts for driving while license was suspended were not before the court on the petition and the Commonwealth had no reason to enter evidence in that regard at the suppression hearing. Thus, the trial court

erred in dismissing those charges and we reverse the order in that regard.  As for the DUI counts, given our reversal of the court's decision to grant Appellee's motion to suppress, we vacate the order granting the petition for a writ of *habeas corpus* and remand for the court to consider Appellee's request without suppressing any evidence.

Based on the foregoing, we reverse the order granting Appellee's motion to suppress, reverse the order granting Appellee's petition for a writ of *habeas corpus* as to the driving while license was suspended charges, vacate the order granting Appellee's petition for a writ of *habeas corpus* as to the DUI charges, and remand for proceedings consistent with this memorandum.

Order reversed in part and vacated in part.  Case remanded for further proceedings.  Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/12/2023

- 11 -