J-A19026-25

2026 PA Super 19

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                               :              PENNSYLVANIA
                                               :
                        v.                     :
                                               :
                                               :
                                               :
EDWARD GRAHAM                                  :
                                               :
                    Appellant                  :      No. 1037 WDA 2024

Appeal from the Judgment of Sentence Entered July 22, 2024
In the Court of Common Pleas of Allegheny County
Criminal Division at No: CP-02-CR-0007219-2022

BEFORE:  BOWES, J., STABILE, J., and BENDER, P.J.E.

OPINION BY STABILE, J.:                     **FILED:  February 2, 2026**

Appellant, Edward Graham, appeals from the July 22, 2024, judgment of sentence imposing five years of probation for unlicensed carry of a concealed firearm (18 Pa.C.S.A. § 6106(a)(1)).  We affirm.

The trial court summarized the pertinent facts in its Pa.R.A.P. 1925(a) opinion:

> On September 8, 2022, Officer Justin DeSimone of the Allegheny County Police Department initiated a traffic stop of a vehicle driven by [Appellant] because the registration of the vehicle had expired.  Upon approaching the vehicle, Officer DeSimone encountered [Appellant], who was driving the vehicle. [Appellant's] girlfriend, Tiara Pannell, was the front seat passenger of the vehicle.  [Appellant] opened the driver's side window and Officer DeSimone smelled the faint odor of unburnt marijuana coming from the vehicle.  Ms. Pannell advised Officer DeSimone that she was the owner of the vehicle.  Officer DeSimone asked her to exit the vehicle and she complied.  Officer DeSimone informed the occupants that he could smell marijuana and Ms. Pannell advised that she had a medical marijuana card but it was currently expired.  She also advised that she had smoked marijuana earlier in the day.  Officer DeSimone asked if he could search the vehicle and Ms. Pannell confirmed that he

could. Officer DeSimone then asked [Appellant] to exit the vehicle. Officer DeSimone searched the vehicle and located a firearm inside a fanny pack that was on the rear seat of the vehicle behind the driver's seat. He also located a plastic sandwich bag containing marijuana from the center console of the vehicle. [Appellant] admitted that the fanny pack belonged to him. He also informed Officer DeSimone that he did not possess a concealed carry permit. [Appellant] was then arrested.

Trial Court Opinion, 1/6/25, at 1-2.

Appellant filed his motion to suppress the firearm on October 6, 2023. In it, he claimed the investigating officer unlawfully prolonged a completed traffic stop prior to discovering the firearm. He also claimed that the fanny pack in which the firearm was discovered was not within the scope of Pannell's consent to search. The trial court held a hearing on the motion on October 12, 2023. Officer DeSimone was the only witness. After hearing, the trial court requested briefs from both parties. The trial court denied the suppression motion by order of February 20, 2024. On February 22, 2024, Appellant filed a motion requesting findings of fact and conclusions of law, but the trial court did not act on that motion. At the conclusion of a July 22, 2024, stipulated bench trial, the trial court found Appellant guilty under § 6106(a)(1). The trial court proceeded immediately to sentencing, and this timely appeal followed.

Appellant presents two questions:

I.      Whether the trial court erred in denying suppression where the police officer extended the otherwise completed traffic stop but he lacked reasonable suspicion to believe criminal activity was afoot?

II.    Whether the trial court erred in denying suppression where the police officer searched the fanny pack found behind the driver's seat, but the driver's consent to the search did not include the search of any personal belongings?

Appellant's Brief at 4.

We conduct our review mindful of the following:

[O]ur standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. We are bound by the suppression court's factual findings so long as they are supported by the record; our standard of review on questions of law is *de novo*.  Where, as here, the defendant is appealing the ruling of the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted.  Our scope of review of suppression rulings includes only the suppression hearing record and excludes evidence elicited at trial.

*Commonwealth v. Yandamuri*, 159 A.3d 503, 516 (Pa. 2017) (citations omitted).

Appellant first argues that the basis for the vehicle stop—an expired registration—was exceeded when Officer DeSimone began asking questions about the smell of unburnt marijuana.  The Fourth Amendment to the United States Constitution and Article I, § 8 of the Pennsylvania Constitution protect people from unreasonable searches and seizures.  "The Fourth Amendment protects a fundamentally individual right—the right of each individual to be let alone."  *Commonwealth v. Hicks*, 208 A.3d 916, 937 (Pa. 2019).  That is, "the government may not target and seize specific individuals without any

particular suspicion of wrongdoing, then force them to prove that they are not committing crimes." *Id.* at 942.

Our courts recognize three forms of interaction between police and citizens: a mere encounter, an investigative detention, and a custodial detention. *Commonwealth v. Spence*, 290 A.3d 301, 314 (Pa. Super. 2023).

> A mere encounter can be any formal or informal interaction between an officer and a citizen, but will normally be an inquiry by the officer of a citizen. The hallmark of this interaction is that it carries no official compulsion to stop or respond.
>
> In contrast, an investigative detention, by implication, carries an official compulsion to stop and respond, but the detention is temporary, unless it results in the formation of probable cause for arrest, and does not possess the coercive conditions consistent with a formal arrest. Since this interaction has elements of official compulsion it requires reasonable suspicion of unlawful activity. In further contrast, a custodial detention occurs when the nature, duration and conditions of an investigative detention become so coercive as to be, practically speaking, the functional equivalent of an arrest.

*Id.* at 314 (quoting *Commonwealth v. Jones*, 874 A.2d 108, 116 (Pa. Super. 2005)).

We discern whether a person is under an official compulsion to stop from the perspective of a reasonable person. The court must determine "whether, taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business." *Hicks*, 208 A.3d at 927. To establish reasonable suspicion in support of an

investigative detention, "a police officer must be able to point to specific and articulable facts leading him to suspect criminal activity is afoot." *Commonwealth v. Holmes*, 14 A.3d 89, 95 (Pa. 2011). We discern the presence of reasonable suspicion in light of the totality of the circumstances, and we must "afford due weight to the specific, reasonable inferences drawn from the facts in light of the officer's experience and knowledge and acknowledge that innocent facts, when considered collectively, may permit the investigative detention." *Id.* (quoting *Commonwealth v. Brown*, 996 A.2d 473, 477 (Pa. 1999)). Though Article I, § 8 affords broader protection from searches and seizures than does the federal constitution, its application to investigative detentions is coterminous with that of the Fourth Amendment. *Hicks*, 208 A.3d at 925.

The United States Supreme Court has held that the purpose of a traffic stop is to investigate the infraction that the police officer observed; the stop must not last longer than is necessary to investigate the infraction. *Rodriguez v. United States*, 575 U.S. 348, 354 (2015). "Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed" *Id.* The seizure remains lawful only if unrelated inquiries do not "measurably extend the duration of the stop." *Id.*

In *Rodriguez*, police stopped the defendant for driving on the shoulder of the road. After checking the license of the vehicle occupants and issuing a warning, the investigating officer asked permission to walk his dog around the

vehicle. The driver declined, and the officer detained him and proceeded with the search. The dog alerted and a search of the vehicle revealed methamphetamine. The ***Rodriguez*** Court held that the canine sniff extended the stop beyond the time necessary to address the underlying traffic violation and that it was not supported by reasonable suspicion. As such, the canine sniff was not constitutionally permissible. ***Id.*** at 356.

Instantly, as in ***Rodgriguez***, Officer DeSimone investigated a matter unrelated to the purpose of the traffic stop—possible unlawful possession of marijuana. Pennsylvanians may lawfully possess and consume marijuana under the Medical Marijuana Act ("MMA"), 35 P.S. § 10231.303. Thus, our Supreme Court has held that the smell of marijuana does not, by itself, give rise to probable cause for a warrantless vehicle search. ***Commonwealth v. Barr***, 266 A.3d 25, 41 (Pa. 2021). The smell of marijuana can "be a factor, but not a stand-alone one, in determining whether the totality of the circumstances established probable cause to permit a police officer to conduct a warrantless search of a vehicle." ***Id.*** at 28, 41.

In ***Barr***, police stopped the defendant's car after the car failed to stop at a stop sign. While approaching the stopped vehicle they smelled burnt marijuana. ***Id.*** at 29. The investigating officer told the defendant and his wife, who was in the car with him, that the smell of marijuana justified a search of the vehicle. The defendant was initially uncooperative, but he eventually got out of the car and produced a medical marijuana card. ***Id.*** at

30. Police proceeded with a warrantless search of the vehicle and found a concealed firearm and a bag of marijuana. *Id.*

The *Barr* Court noted that, prior to the passage of the MMA, marijuana was *per se* illegal and the plain smell of marijuana provided probable cause for a warrantless vehicle search. *Id.* at 40. But under the MMA, dry leaf marijuana is lawful to possess by those who are licensed, and it is lawful to consume by vaporization (and the odor of vaporization is indistinguishable from burnt marijuana).[1] *Id.* at 32, 41. Because marijuana is no longer *per se* illegal after the enactment of the MMA, the *Barr* Court concluded that the smell of burnt marijuana does not, by itself, establish probable cause for a warrantless search of a car. *Id.* In so holding, the *Barr* Court "emphasize[d] that the realization that a particular factor contributing to probable cause may involve legal conduct does not render consideration of the factor *per se* impermissible, so long as the factor is considered along with other factors that, in combination, suggest that criminal activity is afoot." *Id.* at 41-42.

Our Supreme Court's analysis in *Barr* built on that of *Hicks*, wherein the Supreme Court held that police may not detain a person observed to be in possession of a concealed firearm in order to determine if the person has a carry license. That is, "the government may not target and seize specific individuals without any particular suspicion of wrongdoing, then force them to

---

[1] As of the publication of *Barr*, there were more than 143,000 people in the Commonwealth who could legally possess and obtain marijuana. *Id.* at 31.

prove that they are not committing crimes." *Hicks*, 208 A.3d at 942. In *Hicks*, the defendant was stopped at a gas station convenience store after he was seen concealing a firearm in his waistband. Police arrived as the defendant was driving away and stopped him. They noticed alcohol on his breath as they removed him from his car and handcuffed him. *Id.* at 922. The defendant had a concealed carry license and was not statutorily prohibited to possess a firearm, and thus was not charged with unlawful possession of a firearm. He was, however, charged with driving under the influence of alcohol.

As pertinent instantly, the outcome in *Hicks* turned on the validity of the initial detention. "So long as the initial detention is lawful, nothing precludes a police officer from acting upon the fortuitous discovery of evidence suggesting a different crime than that initially suspected—such as the odor of alcohol on the breath of a driver, as occurred in the instant case." *Id.* at 927–28. The *Hicks* Court concluded that the stop was not lawful, as the defendant was detained for conduct "which hundreds of thousands of Pennsylvanians are licensed to engage lawfully[.]" *Id.* at 945. As such, police lacked reasonable suspicion for the vehicle stop, and that the evidence of the defendant's use of alcohol should have been suppressed. *Id.* at 951.

Appellant relies on this Court's memorandum in *Commonwealth v. Lomax*, 273 A.3d 1049, 470 MDA 2021 (Pa. Super. February 14, 2022)

(unpublished memorandum),[2] wherein a police officer investigated the smell of unburnt marijuana after stopping the defendant's car for broken taillights. After ordering the defendant out of the car,[3] the officer asked the defendant if he smoked marijuana recently. The defendant denied it and presented a valid medical marijuana card. The police officer returned to his police cruiser, spoke to his partner, approached the defendant once again, and asked him when he last smoked marijuana. The defendant claimed he smoked four hours prior to the stop. The officer then performed field sobriety tests and arrested the defendant for driving under the influence of marijuana. *See id.* at *1. The officer acknowledged at the suppression hearing that there were no signs of impairment in the defendant's driving. Moreover, the defendant was calm and cooperative during the stop. *See id.* at *2.

Relying on *Hicks* and *Barr*, the *Lomax* panel concluded that the officer's questions to the defendant about his smoking marijuana began a new investigative detention without reasonable suspicion. The smell of unburnt marijuana was not, by itself, evidence of impairment, and there was no other evidence that the defendant was impaired. Thus, the *Lomax* Court affirmed the trial court's suppression order.

---

[2] Per Pa.R.A.P. 126(b), unpublished Superior Court memoranda filed after May 1, 2019 may be cited for persuasive authority.

[3] During the course of a valid traffic stop, police may order all of the vehicle's occupants out of the car. *Commonwealth v. Wright*, 224 A.3d 1104, 1109 (Pa. Super. 2019), *appeal denied*, 237 A.3d 393 (Pa. 2020).

Likewise, in **Commonwealth v. Young**, 305 A.3d 963, 1479 MDA 2023 (Pa. Super. September 5, 2023) (unpublished memorandum), the defendant's car was stopped after police observed three separate traffic violations. When the defendant rolled down his window, the police officer smelled raw marijuana. The officer also noted that the defendant was breathing heavily and appeared to be nervous. The officer ordered the defendant out of the vehicle and told him he smelled marijuana. As in the instant case, the defendant admitted to smoking it earlier in the day. The police officer then asked for the defendant's permission to search the vehicle. After the defendant resisted, the officer said he could have the vehicle towed and obtain a search warrant. The officer did, however, tell the defendant that the defendant did not have to consent to the search, and that there would be no consequences for refusing consent. Police found a brick of heroin in the defendant's car and, in a search incident to the defendant's arrest, a container of raw marijuana in his hoodie. **See id.** at *1-2.

The officer "believed he had probable cause to obtain a search warrant for [the defendant's] car because of the odor of marijuana, [the defendant's] confession to smoking marijuana earlier that day, [and the defendant's] displaying deceptive behaviors[.]" **Id.** at *3. The **Young** panel affirmed the trial court's order of suppression, reasoning in part that the Commonwealth did not "provide any meaningful argument to counter the court's conclusion that reasonable suspicion was lacking in this case." **Id.** at *7. "In particular,

- 10 -

the Commonwealth [did] not discuss the cases relied on by the court in reaching its decision, or cite any other legal authority to support its cursory conclusion that the officers possessed reasonable suspicion[.]" *Id.*

Turning now to the instant facts, our review of the record confirms that the record supports the trial court's findings of fact. Officer DeSimone was the only witness at the suppression hearing. As he approached the vehicle after stopping it for the expired registration, he noticed the smell of unburnt marijuana coming from the car. N.T. Suppression, 10/12/23, at 4, 8. He asked Appellant and Pannell for their driver's licenses and returned to his service vehicle to confirm that Appellant, who was driving the vehicle, had a valid license (Pannell's license was suspended) and that neither of them had an outstanding warrant. *Id.* at 5, 9. Upon returning to the vehicle, the following occurred:

> I returned to the vehicle and I asked Miss Pannell to exit the vehicle to speak to me. She agreed. I made her aware of the odor of marijuana. She told me she smoked marijuana earlier in the day. I asked her if she had a medical marijuana card. She said she did, but it was now expired. I then asked her if there was any more marijuana in the vehicle. She stated no,[4] and then consented to a search of the vehicle.

*Id.* at 5. Officer DeSimone's body camera footage reveals that he returned to Pannell's car, with her license and Appellant's license in hand, and asked

---

[4] Pannell eventually did divulge that marijuana was in the car before Officer DeSimone searched the car and found it. *Id.* at 10.

- 11 -

Pannell to step out of the vehicle at 12:48:43 p.m.[5] He informed her of a faint odor of marijuana coming from the car at 12:48:59. Pannell began explaining that she smoked before getting in the car at 12:49:02. Officer DeSimone asked if he could check the car at 12:49:15, and Pannell consented immediately thereafter. The interaction between Pannell and DeSimone, from the time he asked her to get out of the car until she consented to the search, was just over thirty seconds. At 12:49:24, Officer DeSimone asked Pannell if she had an MMA card, and at 12:49:26-27, she said her card had expired. After Pannell consented to the search, DeSimone asked Appellant to exit the vehicle. *Id.* at 6. DeSimone found a plastic baggie with marijuana in the center console, and a zippered-shut black fanny pack in the driver's side back seat that had the firearm in it. *Id.* at 6, 11. Appellant admitted that the fanny pack was his and claimed he did not know it was in the car. *Id.* at 6-7.

As explained above, the United States Supreme Court in *Rodriguez*, held that seizures remain lawful only if an unrelated inquiry does not "measurably extend the duration of the stop." *Rodriguez*, 575 U.S. at 354. Neither party disputes that Officer DeSimone's inquiry about the odor of marijuana was unrelated to the vehicle code violation that justified the stop. So the question becomes whether Officer DeSimone's investigation of the marijuana measurably extended the duration of the stop. Officer DeSimone

---

[5] Officer DeSimone's body camera was introduced as Defense Exhibit A during the suppression hearing.

asked Pannell to exit the vehicle upon returning to her car after running the driver's license checks from his patrol vehicle computer. This action is permissible as part of a vehicle stop for a traffic violation. *Wright*, 224 A.3d at 1109. Thus, all of Officer DeSimone's actions up to this point were normally attendant to a traffic stop. The odor of marijuana was the first thing Officer DeSimone mentioned to Pannell after she exited the vehicle. As noted above, Pannell immediately acknowledged that she smoked earlier that day, and she immediately consented to a search of the vehicle when Officer DeSimone asked. This interaction—from Officer DeSimone's mention of marijuana to Pannell's consent to the vehicle search—took roughly 30 seconds. Within the next 15 seconds, Officer DeSimone asked Pannell if she had an MMA card, and Pannell said her card had expired. Thus, the interaction at issue spanned roughly 45 seconds.

Appellant does not develop an argument for how long is too long for a line of inquiry unrelated to the purpose of the vehicle stop. We observe, however, that the dog sniff in *Rodriguez* extended the stop for "seven or eight minutes" past the issuance of a written warning for the underlying traffic violation. *Rodriguez*, 575 U.S. at 352. In *Lomax*, the defendant denied smoking marijuana and presented a valid MMA card. The officer then returned to his patrol vehicle, talked to his partner, and approached the defendant once again and asked further questions. He then asked the defendant to perform field sobriety tests. The stop in *Lomax* thus extended well beyond the extra

45 seconds at issue here. In *Young*, the police officer persisted in his attempts to persuade the defendant to consent to the vehicle search after the defendant initially refused. Appellant has failed to provide any support for his argument that the brief interaction at issue in this case measurably lengthened the time of the stop to the extent that it became constitutionally impermissible.

Regarding Appellant's reasonable suspicion argument, Officer DeSimone, by the end of his 45-second interaction with Pannell about marijuana, was aware of several facts. There was an odor of marijuana emanating from the car, Pannell disclosed that she smoked earlier in the day (and smoking is not a lawful way to consume medical marijuana), Pannell disclosed that she lacked a valid MMA card, and Pannell owned the car. These are specific and articulable facts which, considered together, create a reasonable inference that Pannell was unlawfully in possession of marijuana. Thus, by the time Officer DeSimone asked for consent to search the vehicle, he was proceeding based on reasonable suspicion which he had garnered without unlawfully extending the stop for the traffic code violation.

In analyzing the applicable law, we first turn to *Barr*, which teaches that, after the enactment of the MMA, the odor of marijuana does not, by itself, give rise to probable cause for the search of a vehicle. But *Barr* permits the smell of marijuana to be considered as a factor in whether criminal activity is afoot. Instantly, the marijuana is one factor in deciding when reasonable

suspicion arose. And the instant case is plainly distinct from *Barr* in that Pannell consented to the search of her vehicle, whereas the police in *Barr* conducted a warrantless search without consent.

Next, we consider *Hicks*, which teaches that an observation of activity that is lawful if licensed—in that case the possession of a concealed firearm—does not provide reasonable suspicion in support of a detention to check for a valid license. In this case, unlike *Hicks*, police had a valid reason for the stop independent of the smell of unburnt marijuana, the possession of which is lawful with an MMA card. Pannell was not stopped solely for the purpose of determining whether she had an MMA card.

The unpublished memoranda that Appellant relies on do not support his case. This case is distinct from *Lomax* in that Pannell, unlike the defendant in *Lomax*, did not deny smoking marijuana, nor did she claim to have a valid card. Further, the officer in *Lomax* extended the duration of the stop for further investigation of the defendant's possible possession of marijuana after the defendant's initial denials. He returned to his patrol vehicle, spoke to his partner, then asked the defendant more questions about his marijuana use. Likewise, *Young* is distinguishable because the police officer, acting only on the odor of marijuana and the defendant's admission of smoking marijuana earlier in the day, persisted with requests to search the defendant's vehicle. The officer went so far as to threaten to tow the vehicle and get a warrant for it. The defendant in that case, unlike Pannell, did not readily divulge that he

was not licensed under the MMA. Further, **Young** is an unpublished memorandum and the panel reached its conclusion based, at least in part, on the inadequacy of the Commonwealth's argument in that case. And, as unpublished memorandums, neither **Lomax** nor **Young** is binding here.

In summary, we conclude that Officer DeSimone did not unlawfully extend the duration of the stop in this case, and that he had reasonable suspicion to believe that Pannell was unlawfully in possession of marijuana by the time he asked her to consent to the search of her car. For these reasons, Appellant's first argument fails. We now turn our attention to the second, in which Appellant claims that Pannell's consent was coerced.

We begin with several observations. First, as noted above, Appellant was not the owner of the vehicle. He does not explain how he had standing to challenge Pannell's consent to the search of her vehicle. He does not explain how he has a privacy interest in Pannell's vehicle, nor does he argue that he retained a privacy interest in the fanny pack, of which he claimed ownership at the site. The Commonwealth, for its part, does not challenge Appellant's standing to raise this issue. Appellant argues that the search of the fanny pack exceeded the scope of Pannell's consent to search the vehicle for marijuana because her consent did not extend to a search of personal belongings within the vehicle. We confine our analysis accordingly. Assuming *arguendo* that Appellant has standing to raise this issue, his argument is of no merit.

A police officer may search a car without a warrant or probable cause if the owner consents. **Commonwealth v. Yedinak**, 676 A.2d 1217, 1220 (Pa. Super. 1996), *appeal denied*, 693 A.2d 588 (Pa. 1997). Likewise, "the scope of a search is generally limited to the areas where the object of the search may be found, but the party consenting to a search may restrict authorization to defined areas." **Id.** "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of objective reasonableness— what would the typical reasonable person have understood by the exchange between the officer and the suspect?" **Id.** (quoting **Florida v. Jimeno**, 500 U.S. 248, 251 (1991)).

Appellant argues here that Pannell would not reasonably have understood that she consented to a search of belongings in the vehicle rather than the vehicle itself. In other words, Pannell would not have understood that the scope of her consent extended to a fanny pack in the back seat.

The record reveals that Pannell, after initially denying that marijuana was in the car, divulged that she had a bag of marijuana in the car before Officer DeSimone began his search. Appellant fails to explain why a bag of marijuana would not be found within a fanny pack, or why an objectively reasonable person consenting to a search of a car for marijuana would not understand that the scope of the search would include containers that could conceal marijuana.

Appellant relies on this Court's unpublished memorandum in ***Commonwealth v. Sullivan***, 293 A.3d 588, 757 EDA 2022 (Pa. Super. Feb. 1, 2023) (unpublished memorandum), wherein this Court held that the defendant's general consent to search his car did not include consent to search a zippered makeup bag found in the glove compartment. The makeup bag contained two glassine bags of heroin. The police officer did not explain to the defendant why he was searching the car or what he was searching for. ***Id.*** at *2. The ***Sullivan*** panel found the Commonwealth's challenge to the suppression order waived, but the panel also concluded that it would fail on the merits because a generalized consent to search a vehicle did not reasonably include the contents of an "innocuous looking makeup bag that was found inside of a glove compartment with no indication that he would find anything criminal inside[.]" ***Id.*** at *8.

The holding in ***Sullivan*** is *dicta* contained within a non-precedential memorandum, and it is easily distinguishable from the instant case. Here, Pannell was aware that Officer DeSimone was searching her car for marijuana. Marijuana could be concealed within a fanny pack. Appellant does not attempt to argue otherwise. Appellant also fails to explain why the fact that Officer DeSimone found a bag of marijuana in the front center console prior to searching the fanny pack placed the fanny pack outside of the scope of Pannell's consent. Finding marijuana in one part of a car does not preclude the possibility that more is present elsewhere within the same car. Appellant

has failed to demonstrate that Officer DeSimone's search of the fanny pack was unlawful under the circumstances of this case.

Because we have considered and rejected both of Appellant's arguments, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

DATE:  2/2/2026