J-S42018-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
                             :           PENNSYLVANIA
                             :
              v.             :
                             :
                             :
ADRIAN LEE SACCOACH          :
                             :
           Appellant         :  No. 598 MDA 2025

Appeal from the Judgment of Sentence Entered April 14, 2025
In the Court of Common Pleas of Centre County Criminal Division at
No(s):  CP-14-CR-0000706-2024

BEFORE:  OLSON, J., KING, J., and LANE, J.

MEMORANDUM BY KING, J.:              **FILED: MARCH 12, 2026**

Appellant, Adrian Lee Saccoach, appeals from the judgment of sentence entered in the Centre County Court of Common Pleas, following his bench trial convictions for driving under the influence of a controlled substance ("DUI") and the summary offense of careless driving.[1]  We affirm.

The relevant facts and procedural history of this appeal are as follows. On March 7, 2024, at approximately 11:36 p.m., Pennsylvania State Troopers Murarik and Prisk were traveling eastbound on Port Matilda Highway when they observed Appellant driving a white Lexus.  Appellant's vehicle crossed the double yellow lines in the center of the roadway.  This maneuver caused "another vehicle traveling westbound … to move out of their lane of travel to

_____

[1] 75 Pa.C.S.A. §§ 3802(d)(2) and 3714(a), respectively.

avoid contact with" Appellant's vehicle. (N.T. Trial, 1/29/25, at 9). The troopers followed Appellant's vehicle for one to two miles. The troopers observed the vehicle cross the fog line, weave within its lane, and fail to maintain a constant speed. The troopers subsequently initiated a traffic stop.

Trooper Murarik approached the driver-side window and contacted Appellant. Trooper Prisk approached the passenger's side. The troopers observed Appellant's glassy and bloodshot eyes, shaking hands, and fast rate of speech. The troopers then requested that Appellant perform standardized field sobriety tests ("SFSTs"). Appellant exhibited indicia of intoxication during the tests, and the troopers arrested him on suspicion of DUI. The troopers transported Appellant to a hospital, but Appellant refused blood testing.

On July 3, 2024, the Commonwealth filed a criminal information charging Appellant with DUI, careless driving, and driving on roadways laned for traffic—driving within single lane.[2] Appellant proceeded to a bench trial on January 29, 2025. At trial, the Commonwealth presented testimony from Troopers Murarik and Prisk. The troopers detailed their training and experience in the detection of impaired drivers, as well as their observations about Appellant's behavior on the night of the arrest. Following trial, the court found Appellant guilty of DUI and careless driving. The court found Appellant not guilty of driving on roadways laned for traffic. On April 14, 2025, the court

---

[2] 75 Pa.C.S.A. § 3309(1).

sentenced Appellant to seventy-two (72) hours to six (6) months' imprisonment, plus fines and costs. Appellant did not file post-sentence motions.

Appellant timely filed a notice of appeal on May 6, 2025. On May 7, 2025, the court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant timely filed his Rule 1925(b) statement on May 22, 2025.

Appellant now raises three issues for this Court's review:

> Did the trial court err as a matter of law and fact in entering a guilty verdict for [DUI] where the conviction was not supported by sufficient evidence?
>
> Did the trial court err in denying Appellant's oral motion for [judgment] of acquittal on all charges, due to the verdict being against the weight of the evidence and resting solely on speculative testimony from the officers? Did the trial court improperly disregard objective, exculpatory facts plainly visible on the mobile video recording ("MVR")? Did the court err when completely disregarding the lack of scientific evidence—namely, no toxicology report and no drug recognition expert ("DRE") evaluation—to support a finding of impairment due to a controlled substance? Moreover, did the court err when stating, on the record: "I will say, though, that having additional evidence from a [DRE], particularly in the light of a refusal, would have been perhaps helpful…," which reflects the trial court's uncertainty and exposes a critical evidentiary mistake—specifically, the lack of expert testimony necessary to establish impairment and his own doubt?
>
> Did the trial court commit legal error by finding Appellant guilty of DUI after finding him not guilty of the traffic violations that formed the sole basis for the investigatory stop? As well as give undue weight to the results of the [SFSTs]?

(Appellant's Brief at 8–9) (record citation omitted).[3]

Appellant's first two issues are related, and we address them together. Appellant claims that the SFST results were the only reason for the troopers' belief that Appellant was impaired. Appellant emphasizes that SFSTs are useful for identifying alcohol impairment only, and the tests lack scientific reliability when used to evaluate suspected drug use. Appellant argues that there was no objective or scientific confirmation of his drug impairment where the troopers did not obtain a toxicology report or DRE evaluation. Appellant further argues that Trooper Prisk could not testify with certainty about what, if any, drugs Appellant was using, and the trooper's conclusions amounted to an educated guess.

Additionally, Appellant submits that the court improperly disregarded the exculpatory nature of the video footage played at trial.[4] Appellant also references certain post-trial statements from the presiding jurist, which Appellant interpreted to reflect the court's uncertainty about whether the

_____

[3] We have reordered Appellant's issues for purposes of disposition.

[4] At trial, the Commonwealth presented a MVR and the troopers' body camera footage. (*See* N.T. Trial at 14, 22, and 59). These videos, however, were not included with the certified record for this Court's review. Thus, we cannot review any arguments related to the videos due to Appellant's failure to ensure their inclusion in the record. *See Commonwealth v. B.D.G.*, 959 A.2d 362, 372 (Pa.Super. 2008) (*en banc*) (reiterating that "[o]ur law is unequivocal that the responsibility rests upon the appellant to ensure that the record certified on appeal is complete," and "what is not contained in the certified record does not exist for purposes of our review").

Commonwealth had met its evidentiary burden. Appellant maintains that the court's uncertainty is further evidenced by the fact that it did not convict him of driving on roadways laned for traffic, which was the offense that provided the basis for the traffic stop. For these reasons, Appellant concludes that the Commonwealth presented insufficient evidence to support the DUI conviction. Appellant also concludes that the verdict was against the weight of the evidence.[5] We disagree.

When examining a challenge to the sufficiency of evidence, our standard of review is as follows:

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.
>
> The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, the fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn

_____

[5] Although he did not raise his weight challenge in a post-sentence motion, Appellant asserts that he preserved his claim in an oral motion following trial. Our review of the transcript supports Appellant's assertion that he arguably preserved this claim by raising it in the trial court in the first instance. (*See* N.T. Trial at 84-88).

therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

*Commonwealth v. Sebolka*, 205 A.3d 329, 336-37 (Pa.Super. 2019) (quoting *Commonwealth v. Franklin*, 69 A.3d 719, 722-23 (Pa.Super. 2013)).

In reviewing a challenge to the weight of the evidence, our standard of review is as follows:

> The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the … verdict if it is so contrary to the evidence as to shock one's sense of justice.
>
> *Commonwealth v. Small*, 559 Pa. 423, [435,] 741 A.2d 666, 672-73 (1999). Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Champney*, 574 Pa. 435, 444, 832 A.2d 403, 408 (2003), *cert. denied*, 542 U.S. 939, 124 S.Ct. 2906, 159 L.Ed.2d 816 (2004) (most internal citations omitted).

The Motor Vehicle Code defines the offense of DUI-controlled substance as follows:

**§ 3802.   Driving under influence of alcohol or controlled substance**

* * *

**(d)      Controlled substances**.—An individual may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following circumstances:

* * *

> (2)   The individual is under the influence of a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle.

75 Pa.C.S.A. § 3802(d)(2).

"[T]o convict a defendant under this section, the Commonwealth must establish three elements: 1) that the defendant drove; 2) while under the influence of a controlled substance; and 3) to a degree that impairs the defendant's ability to drive safely." **Commonwealth v. Spence**, 290 A.3d 301, 309 (Pa.Super. 2023).   "[S]ubsection 3802(d)(2) does not limit, constrain, or specify the type of evidence that the Commonwealth can proffer to prove its case." **Commonwealth v. Griffith**, 613 Pa. 171, 183, 32 A.3d 1231, 1239 (2011).  "This provision by its plain text does not require that a drug be measured in the defendant's blood[.]"  **Id.**   Additionally, the Commonwealth is not required to introduce expert testimony to meet its burden.  **See Commonwealth v. Graham**, 81 A.3d 137, 146 (Pa.Super. 2013), *appeal denied*, 625 Pa. 662, 93 A.3d 462 (2014).  "[I]mpairment

evidence should be drawn from the totality of the factual circumstances."

***Spence, supra*** at 309.

Regarding SFSTs, this Court has observed:

[S]uch tests are grounded in theories which link an individual's lack of coordination and loss of concentration, with intoxication. This inter-relationship is also recognized in what is generally accepted as the common indicia of intoxication, within the understanding and experience of ordinary people. In fact, non-expert testimony is admissible to prove intoxication where such testimony is based upon the witness' observation of the defendant's acts and speech and where the witness can opine as to whether the defendant was drunk.

Such tests are generally accepted methods for ascertaining alcohol or drug impairment at the time of a traffic stop.

***Commonwealth v. Marberger***, 344 A.3d 403, 414 (Pa.Super. 2025)

(internal citations and quotation marks omitted).

Further:

"In any … criminal proceeding in which the defendant is charged with a DUI ..., the fact that the defendant refused to submit to chemical testing … may be introduced in evidence along with other testimony concerning the circumstances of the refusal." 75 Pa.C.S.A. § 1547(e). While no presumption of guilt automatically arises from the refusal, the [finder of fact] may consider the refusal "along with other factors concerning the charge." ***Id.*** Otherwise, one could use drugs, "drive under the influence of those drugs, and avoid prosecution entirely simply by refusing a blood test. We refuse to countenance this absurd result." ***Commonwealth v. DiPanfilo***, 993 A.2d 1262, 1268 (Pa.Super. 2010) (footnote omitted).

***Commonwealth v. Caraballo***, 325 A.3d 1025, 1031 (Pa.Super. 2024),

*appeal denied*, ___ Pa. ___, 333 A.3d 1257 (2025).

Instantly, the Commonwealth presented Troopers Prisk and Murarik, who testified about their observations of Appellant on the night in question. The troopers explained that they followed Appellant's vehicle for one to two miles. During this pursuit, they "observed [Appellant's] vehicle cross over the double yellow line, cross over the fog line multiple times, and it had fluctuating speed." (N.T. Trial at 8). "When [Appellant] crossed over the double yellow line, there was another vehicle traveling westbound, and they actually had to move out of their lane of travel to avoid contact with" Appellant's vehicle. (*Id.* at 9). Based on these observations, the troopers effectuated a traffic stop.

During the traffic stop, Trooper Murarik approached Appellant and "noticed he had red, glassy, bloodshot eyes. He had fast, talkative speech, and I noticed his hands were shaking." (*Id.* at 14). Based on Trooper Murarik's training and experience, he believed that Appellant was driving while impaired. Trooper Murarik asked Appellant for his driver's license, proof of insurance, and vehicle registration. The trooper "had to ask [Appellant] multiple times to retrieve the documentation … and while obtaining the information, [Appellant] was also fumbling with his wallet and dropping stuff." (*Id.* at 14-15).

The troopers then requested that Appellant exit the vehicle to perform SFSTs. Both troopers testified that Appellant's performance on the tests demonstrated signs of impairment. Initially, Trooper Murarik asked Appellant to perform the walk-and-turn test. When Trooper Murarik placed Appellant in

the starting position for the test, the trooper "noticed [Appellant] raised his arms multiple times and was unable to maintain his balance." (*Id.* at 20). Thereafter, Appellant "refused the test. He stated that the road was too uneven for him to complete it." (*Id.*) Trooper Prisk added:

> As I observed the test, I observed [Appellant] unable to maintain focus. He had a clenched jaw. I observed him to have glassy, bloodshot eyes, small pupils in dark lighting. He was also shaking and unable to maintain balance, raising his arm over six inches during the instructional phase.

(*Id.* at 50).

Trooper Prisk described Appellant's performance on the next test, the modified Romberg test, as follows:

> There were numerous signs of impairment that were detected. He had upper body swaying to the front and back and some to the left and right. There were eyelid tremors. He had clear nasal. His internal clock was fast, which is also a sign of a stimulant. It was 22 seconds when I requested him to have the passage of 30 seconds.

(*Id.* at 54-55). Appellant then attempted the finger-to-nose test. Trooper Prisk explained: "There were numerous signs of impairment on this test. He missed finger to nose multiple times and touched the pad of his finger and not the tip." (*Id.* at 56). At that point, the troopers concluded Appellant was under the influence of a controlled substance.[6] The troopers arrested

---

[6] The trial court added:

> Trooper Prisk testified that he has his [SFST] certification, as well as his Advanced Roadside Impaired Driving

*(Footnote Continued Next Page)*

- 10 -

Appellant and transported him to a hospital, but Appellant refused to submit to a blood test.

Viewed in the light most favorable to the Commonwealth as verdict-winner, this evidence was sufficient to convict Appellant of DUI—controlled substance. *See Griffith, supra*; *Spence, supra*. We emphasize that the totality of the circumstances, including Appellant's erratic driving, performance on the SFSTs, and subsequent refusal to submit to blood testing, provided adequate circumstantial evidence of Appellant's usage of a controlled substance. Likewise, we cannot say that the trial court palpably abused its discretion in rejecting the weight claim.[7] *See Champney, supra*. Accordingly, Appellant is not entitled to relief on his first two issues.

In his final issue, Appellant argues that "[t]he initial traffic stop was based on the troopers' claim that Appellant was weaving within his lane and crossed both the center line and the fog line." (Appellant's Brief at 37). Appellant insists, however, that Trooper Murarik "altered his account" of the

_____

Enforcement ("ARIDE") certification, which Trooper Prisk describes as an intermediary certification between SFST certification and [DRE] certification. Trooper Prisk testified that he has made over 200 traffic stops for impaired driving in his seven years with the Pennsylvania State Police.

(Trial Court Opinion, filed 6/3/25, at 2) (unnumbered).

[7] The trial court reviewed the MVR footage, and it "heard credible testimony from the arresting officer that was consistent with the MVR footage." (Trial Court Opinion at 4) (unnumbered).

- 11 -

interaction on cross-examination. (*Id.*) Thereafter, "[t]he trial court ultimately found Appellant not guilty of [driving on roadways laned for traffic], effectively rejecting the very basis upon which the stop was made." (*Id.* at 39). Appellant concludes that "the court's own findings confirm that the stop lacked legal justification, and any evidence derived from it should have been suppressed." (*Id.*) Appellant's claim is waived.

The Pennsylvania Rules of Criminal Procedure govern the suppression of evidence as follows:

### Rule 581. Suppression of Evidence

(A)   The defendant's attorney, or the defendant if unrepresented, may make a motion to the court to suppress any evidence alleged to have been obtained in violation of the defendant's rights.

(B)   Unless the opportunity did not previously exist, or the interests of justice otherwise require, such motion shall be made only after a case has been returned to court and shall be contained in the omnibus pretrial motion set forth in Rule 578. If timely motion is not made hereunder, the issue of suppression of such evidence shall be deemed to be waived.

Pa.R.Crim.P. 581(A)-(B). "It has been held, therefore, that the 'failure to raise a suppression issue prior to trial precludes its litigation for the first time at trial, in post-trial motions or on appeal.'" *Commonwealth v. Collazo*, 654 A.2d 1174, 1176 (Pa.Super. 1995) (quoting *Commonwealth v. Scaine*, 486 A.2d 486, 487 (Pa.Super. 1984)).

Instantly, Appellant did not file a pretrial suppression motion seeking to challenge the quantum of evidence supporting the initial traffic stop. Thus,

Appellant's current challenge to the legality of the stop is waived.[8] *See*

Pa.R.Crim.P. 581(B). Accordingly, we affirm the judgment of sentence.

---

[8] Appellant also argues that the court rendered an inconsistent verdict due to its acquittal on the charge of driving on roadways laned for traffic:

> Here, there were no reports alleging an erratic driver, and the stop was based solely on the troopers' observations, which were objectively refuted by the MVR and the court finding Appellant not guilty of the traffic offense that formed the basis for the stop.
>
> While Pennsylvania courts generally recognize that inconsistent verdicts may be permissible in jury trials, that principle is inapplicable in the context of a bench trial where the factfinder, the trial judge, is the same decisionmaker in both the underlying traffic charges and the DUI offense. In such circumstances, internal inconsistency in the court's factual findings reflect a legal error or misapplication of the burden of proof.

(Appellant's Brief at 42).

Contrary to Appellant's assertions, our review of the record confirms that the Commonwealth presented evidence to demonstrate Appellant's erratic driving. (*See* N.T. Trial at 8-9, 47). Such evidence supported the conviction for careless driving, which Appellant does not acknowledge in his argument. Nevertheless, assuming without deciding that the verdict was somehow inconsistent, we have already concluded that sufficient evidence supported Appellant's DUI conviction. *See Commonwealth v. Cook*, 865 A.2d 869, 877 (Pa.Super. 2004), *appeal denied*, 584 Pa. 672, 880 A.2d 1236 (2005) (stating judge, in non-jury trial, has power to render inconsistent verdicts; as such, Superior Court will not disturb guilty verdict on basis of apparent inconsistencies if sufficient evidence supports verdict).

Judgment of sentence affirmed.


Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary


Date: 3/12/2026