J-S46027-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
RAESHAWN DUPREE MCCALLUM :
:
Appellant : No. 637 WDA 2025

Appeal from the Judgment of Sentence Entered January 4, 2024
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0000797-2022

BEFORE:  BOWES, J., NICHOLS, J., and KING, J.

MEMORANDUM BY NICHOLS, J.:                  **FILED: June 3, 2026**

Appellant Raeshawn Dupree McCallum appeals from the judgment of
sentence imposed following his convictions for first-degree murder, robbery,
criminal conspiracy to commit robbery, burglary, criminal conspiracy to
commit burglary, theft by unlawful taking, possession of a weapon, and
firearms not to be carried without license.[1]  On appeal, Appellant challenges
the sufficiency and weight of the evidence supporting his convictions as well
as the distribution of a transcript to the jury.  We affirm.

_____

[1] 18 Pa.C.S. §§ 2502(a), 3701(a)(1), 903, 3502(a)(1), 903, 3921(a), 907(b),
and 6106(a)(1), respectively.

We incorporate the facts of this case as set forth in the memorandum opinion filed at the docket number of Appellant's co-defendant,[2] which establishes the following:

> [Appellant] was involved in a crime spree in the late summer and fall of 2018[, which occurred in Erie, Pennsylvania]. All incidents involved the armed robbery and/or burglary of drug dealers, at the recommendation of cooperating co-conspirator, Chinello Blaski. [Appellant] was convicted [of the above-mentioned charges] after a three-week jury trial. [Appellant's] trial was joined with two co-defendants, [Christopher Bridges] and Destin Dortch. [We glean the following factual history from the testimony presented during trial].
>
> Phillip Clark, also known as Tony Clark or Tone Clark, was shot to death in his home in early September 2018. When police arrived, the home had been ransacked. Police described the scene as appearing as if someone was looking for something. *See* N.T. Trial, Day 2, 10/20/23, at 65-66.
>
> Co-conspirator Blaski provided the following information to police. Blaski claimed Bridges and [Appellant] approached him looking for people to rob. Blaski suggested Clark, among others, as he knew him as a fellow drug-dealer. Blaski explained Clark sold drugs and frequently robbed other drug dealers as they tend not to call police. Blaski drove Bridges, [Appellant] and another cooperating co-conspirator, Nicholas Grayson, to Clark's home to see if they could locate a good place to enter the home. Blaski stayed in the car while the other three walked around Clark's house checking windows and other potential entry points. They were unable to locate a good place to enter Clark's house.
>
> Later, Blaski left Grayson, [Appellant], and Bridges at his apartment. Blaski left to run an errand and returned to his apartment, expecting to head to Clark's house for the robbery/burglary they had planned. When Blaski returned to his apartment, however, co-defendant Dortch was present. Blaski said [Appellant] and Bridges invited Dortch over as he is the "go-

---

[2] We note that Appellant and his co-defendant were tried together at a consolidated trial. *See Commonwealth v. Bridges*, 631 WDA 2024, 2025 WL 573992, at *1 (Pa. Super., filed February 21, 2025) (unpublished mem.).

to guy for getting into residences." N.T. Trial, Day 3, 10/23/23, at 28. Grayson stayed behind while the other four went to Clark's house. Blaski was the get-away driver and stayed in the car while Bridges, [Appellant], and Dortch broke into Clark's house.

When the three got back into Blaski's waiting car, they were excited. Blaski explained the three were talking about shooting Clark. Blaski told police that was not part of the plan, and he was upset at the three for shooting Clark during the planned robbery/burglary. Blaski described [Appellant] as the first to say he shot Clark, claiming that Dortch tried to "steal his body." N.T. Trial, Day 3, 10/23/23, at 45. Blaski clarified that Dortch tried to shoot Clark, but his gun jammed. Blaski said Dortch and [Appellant] were acting like it was a joke or a game. Bridges joined in the conversation by saying he tried to shoot Clark, too, but his gun also jammed.

Police obtained Facebook posts and messages corroborating the information provided by Blaski and Grayson. Ballistics evidence did not connect Bridges to the murder of Clark, but did match another shooting involving [Appellant].

*Bridges*, 2025 WL 573992, at *1–2 (some formatting altered).

Prior to trial, Appellant challenged the admission of an audio-video recording from Appellant's interview with police. *See* N.T. Motion in Limine, 10/25/23, at 3-9. In that video, Appellant appears in a prison uniform and identifies a .380 caliber firearm in a photograph. *See id.* at 3-4, 10. The Commonwealth offered this video to show that Appellant had familiarity with the type of firearm used in one of the homicides. *See id.* at 3-6. Appellant raised concerns about allowing the jury to see him in a prison uniform and the clarity of the audio in the video and the accuracy of the Commonwealth's transcript of the audio. *See id.* at 8-9. Ultimately, the trial court did not admit the video, which showed Appellant in a prison uniform, but ruled that portions of the audio were admissible. *See id.* at 12-13. The trial court also

stated that a cautionary jury instruction would be given regarding the proper use of the Commonwealth's transcript of the audio. *See id.* at 8-10.

At the conclusion of trial, Appellant was convicted of the above-stated charges. On January 4, 2024, the trial court imposed a mandatory sentence of life in prison without parole for first-degree murder,[3] followed by ten to twenty years' incarceration. *See* Sentencing Order, 1/4/24.

Appellant filed a timely post-sentence motion challenging the weight of the evidence and the trial court's decision to allow the jury to access the audio transcript, which the trial court denied on May 10, 2024. *See* Post Sentencing Motion, 1/16/24; Trial Ct. Order, 5/10/24. Appellant filed a timely notice of appeal.[4] Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following issues for review:

1. Whether the [trial] court committed legal error and abused its discretion in failing to grant [Appellant's] motion for acquittal asserted at trial and [in his] post-sentencing motion in which he sought the entry of an arrest of judgment or the provision of a new trial predicated on the argument that the jury's verdict was against the weight of the evidence or[,] alternatively[,] was supported by insufficient evidence to sustain the guilty verdicts as to all criminal counts and in specific regard to the

---

[3] *See* 18 Pa.C.S. § 1102(a).

[4] On April 4, 2025, Appellant filed a petition pursuant to the Post-Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546, seeking reinstatement of his direct appeal rights *nunc pro tunc*. *See* PCRA Petition, 4/4/25. On April 28, 2025, the trial court granted Appellant's petition and reinstated Appellant's direct appeal rights *nunc pro tunc*. *See* Trial Ct. Order, 4/28/25.

criminal convictions related to the shooting death of Philip Clark? [5]

2. Whether the [trial] court committed legal error and abused its discretion in permitting the dissemination of the transcript of the portion of the police interview of Appellant by . . . Detective Janus that was offered by the Commonwealth via audio recording during the direct examination of Detective Janus?

*See* Appellant's Brief at 3 (some formatting altered).

**Weight of the Evidence**

In his first claim, Appellant challenges the weight of the evidence supporting his convictions relating to the shooting death of Phillip Clark.[6] *See* Appellant's Brief 8-11. In support, Appellant argues that there was no direct

_____

[5] In his Rule 1925(b) statement, Appellant claimed his convictions were "supported by insufficient evidence as a matter of law **as to all criminal counts at the respective dockets**." *See* Rule 1925(b) Statement, 6/23/25, at 1 (unpaginated) (emphasis added). Accordingly, to the extent that Appellant challenges the sufficiency of the evidence, we find that claim waived because he failed to identify any element of any conviction where the evidence was insufficient. *See Commonwealth v. Tyack*, 128 A.3d 254, 260 (Pa. Super. 2015) (finding that the appellant's sufficiency claim was waived on appeal because the appellant's "Rule 1925(b) statement did not sufficiently identify the error that Appellant intended to challenge on appeal. [Specifically,] **the 1925(b) statement failed to specify the element or elements upon which the evidence was insufficient**" (emphasis added and citation omitted)).

[6] All of Appellant's convictions relate to the shooting death of Phillip Clark. *See* Sentencing Order, 1/4/24; *see also* Criminal Information, 5/27/22. Appellant's argument suggests that he challenges the weight of the evidence establishing his presence at the home where the burglary and homicide of Phillip Clark occurred and that he carried a firearm during the crime. *See* Appellant's Brief at 8-11. While Appellant does not specifically name each of the verdicts he challenges, we glean that Appellant is challenging the weight of the evidence establishing that he was present at the home where the homicide and robbery occurred, and his use of a firearm during the crime.

evidence presented at trial implicating him other than the allegedly unreliable and discredited testimony from Chinelo Blaski (Blaski) and Nicholas Grayson (Grayson). *See id.* Appellant also argues that only Grayson's DNA was found on the murder weapon and that, therefore, the verdicts were against the weight of the evidence. *See id.*

Initially, we note that in reviewing a challenge to the weight of the evidence, we are governed by the following standard of review:

> The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none, or some of the evidence and to determine the credibility of the witnesses. Resolving contradictory testimony and questions of credibility are matters for the finder of fact. It is well-settled that we cannot substitute our judgment for that of the trier of fact.

> \* \* \*

> Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

> Furthermore, in order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague[,] and uncertain that the verdict shocks the conscience of the court.

*Commonwealth v. Spence*, 290 A.3d 301, 311 (Pa. Super. 2023) (citations omitted and formatting altered); *see also Commonwealth v. Blackham*, 909 A.2d 315, 320 (Pa. Super. 2006) (stating that "[i]t is not for [the appellate

- 6 -

court] to overturn the credibility determinations of the fact-finder" (citation omitted)). However, "[o]n appeal, our review is distinct from the standard of review applied by the trial court. We do not review the underlying weight of the evidence question. Instead, we examine the judge's exercise of discretion in ruling on that claim." *Commonwealth v. Martin*, 323 A.3d 807, 823 (Pa. Super. 2024) (citations omitted and some formatting altered).

Here, the trial court explained:

[T]his court had the opportunity of presiding over the lengthy trial in this case and was able to see and observe the quantity and quality of evidence presented, in various forms, including the testimonies of Blaski and Grayson, whose creditability was closely and vigorously examined by [Appellant's] counsel. Since the jury was well within its authority to determine that the testimonies were credible, this court also finds that there was more than sufficient corroboration with other evidence presented to support their credibility. Further, the court notes that the verdicts were neither vague nor uncertain as would shock the conscience of this court to warrant a new trial of the case. Therefore, as earlier stressed by this court, case law requires that the evidence is viewed in [the] light most favorable to the verdict winner, *i.e.* to the Commonwealth. The verdicts should therefore be upheld.

Trial Ct. Op. at 7-8 (citations omitted and some formatting altered).

Following our review of the record, we discern no abuse of discretion by the trial court. *See Martin*, 323 A.3d at 823; *Spence*, 290 A.3d at 311; *Blackham*, 909 A.2d at 320. Although Appellant claims that the testimony from Blaski and Grayson was not credible, the jury was "free to believe all, none, or some of the evidence and to determine the credibility of the witnesses." *Spence*, 290 A.3d at 311. Therefore, we will not re-weigh that

evidence or substitute our judgment for the finder of fact on appeal. **See id.**; **Blackham**, 909 A.2d at 320.

Additionally, Appellant's argument regarding the lack of DNA evidence is unavailing, as there was other evidence presented establishing that Appellant shot the victim. Specifically, Blaski identified Appellant in the courtroom during his direct examination and testified that Appellant was the person who fired the weapon that killed Clark during the burglary and robbery. **See** N.T. Trial, Day 3, 10/23/23, at 44-46. Accordingly, we discern no abuse of discretion in the trial court rejecting Appellant's weight claim. **See Spence**, 290 A.3d at 311; **see also Commonwealth v. Harrison**, 736 MDA 2023, 2024 WL 3508009, at *3 (Pa. Super., filed July 23, 2024) (unpublished mem.) (stating "[t]he fact that there was no . . . DNA or fingerprint evidence does not make a guilty verdict against the weight of the evidence where . . . other evidence introduced [was]. . . sufficient to show that the defendant was the perpetrator" (citation omitted)).[7] Therefore, Appellant is not entitled to relief on this claim.

### Jury Access to Transcripts

Appellant also claims that the trial court erred and abused its discretion "in permitting the dissemination of the transcript" of an audio recording of his police interview to the jury because it did not accurately reflect what Appellant stated. Appellant's Brief at 11-15. Specifically, Appellant argues that the

---

[7] **See** Pa.R.A.P. 126(b) (stating this Court may rely on unpublished decisions of this Court filed after May 1, 2019, for their persuasive value).

admission of the transcript was an error because "the [audio] tape was of such poor quality that it was difficult to comprehend what [Appellant said,] and the Commonwealth's [transcript] was subject to dispute." *Id.* at 12. Appellant contends that "the quality of the sound of the audio recording was so challenging that the Commonwealth interpretation was unfounded." *Id.* Appellant claims that the dissemination of the transcript was prejudicial because the content of the transcript was the Commonwealth's "interpretation of what was stated, which remained largely in dispute." *See id.* at 12-13.

Before we address the merits of Appellant's claim, we must determine whether Appellant has preserved the issue for our review. *See Commonwealth v. Edmondson*, 718 A.2d 751, 752 n.7 (Pa. 1998) (explaining that appellate courts may raise the issue of waiver *sua sponte*).

This Court has held that "to preserve a challenge to an evidentiary ruling, a litigant must make a timely and specific objection to the court's ruling." *Commonwealth v. Pacheco*, 227 A.3d 358, 373 (Pa. Super. 2020), *aff'd*, 263 A.3d 626 (Pa. 2021); *see Commonwealth v. Baumhammers*, 960 A.2d 59, 73 (Pa. 2008) (holding "that issues are preserved when objections are made timely to the error or offense" (citation omitted)). Further, when an appellant raises an evidentiary objection but later withdraws that objection, it is waived for appellate purposes. *See Commonwealth v. Johnson*, 301 A.2d 632, 634 (Pa. 1973) (holding that, because defense counsel withdrew his objection, that claim could not be raised on appeal); *see*

*also* Pa.R.A.P. 302(a) (providing that issues not raised in the trial court are waived and cannot be raised for the first time on appeal).

Here, the record reflects that Appellant raised concerns about the clarity of the audio and the accuracy of the Commonwealth's "interpretation" of the audio during the motion in limine hearing. *See* N.T. Motion Hr'g, 10/25/23, at 8-9. However, after listening to the audio at trial and reviewing the Commonwealth's transcript, Appellant's counsel withdrew his objection to the accuracy of the transcript by affirming that his "concerns about the accuracy of the transcript [had] been answered." *See* N.T. Trial, Day 5, 10/25/23, at 4-6. Counsel then agreed to proceed without making any additional argument regarding the transcript's accuracy. *See id.* Because Appellant conceded to the accuracy of the transcript at trial, he has waived his challenge to the accuracy of the transcript on appeal. *See Johnson*, 301 A.2d at 634; *see also Pacheco*, 227 A.3d at 373; *Baumhammers*, 960 A.2d at 73. Accordingly, he is not entitled to relief on this issue.[8]

---

[8] To the extent Appellant challenges other aspects of the transcript on appeal, Appellant fails to cite to the place in the record where he raised those claims before the trial court. Pursuant to the Rules of Appellate Procedure, it is an appellant's responsibility to provide a specific citation to the place in the record where the matter referred to appears and was preserved for appeal. *See* Pa.R.A.P. 2119(c),(e). Moreover, it is not the role of this Court to act as counsel for an appellant and scour the record to support a claim of error or an abuse of discretion. *See Commonwealth v. Beshore*, 916 A.2d 1128, 1140 (Pa. Super. 2007); *Commonwealth v. Kane*, 10 A.3d 327, 333 (Pa. Super. 2010) (concluding that an issue was waived where the appellant failed to identify where in the record the issue was preserved, in violation of Pa.R.A.P. 2119(e)).
*(Footnote Continued Next Page)*

For these reasons, we affirm.

Judgment of sentence affirmed.  Jurisdiction relinquished.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 06/03/2026

_____

Further, Appellant's brief does not include citations to relevant cases that provide this Court with his legal theory of relief, nor does Appellant apply any relevant case law to the facts of his case, as required by the Rules of Appellate Procedure.  **See** Pa.R.A.P. 2119(e); Pa.R.A.P. 2117(c); **see also Commonwealth v. Fletcher**, 986 A.2d 759, 785 (Pa. 2009) (indicating that a claim is waived where an appellant fails to cite pertinent authority or relevant detail in his brief); **Commonwealth v. Berry**, 877 A.2d 479, 485 (Pa. Super. 2005) (stating that "issues that are not supported by citations to the record and to pertinent legal authority are waived" (citation omitted)).  Therefore, even if Appellant had not waived the issue by conceding to the accuracy of the transcript at trial, we would conclude that Appellant waived his challenges to the transcript on appeal.  **See Edmondson**, 718 A.2d at 752 n.7.

- 11 -